*335 OPINION OF THE COURT
Simons, J.
In People v Bartolomeo (53 NY2d 225), we held that a suspect, represented by counsel on a prior pending charge, may not waive his rights in the absence of counsel and answer questions on new unrelated charges. If the police are chargeable with knowledge of the prior representation, any statements the suspect makes, not only about the prior charges but also about the new charges, must be suppressed. Since the rule was announced nine years ago, scarcely a term of court has passed without a Bartolomeo issue being presented to us in one form or another. The three appeals before us, all presenting factual settings encompassed within the Bartolomeo paradigm, call upon us to reexamine the rule once more and to determine whether it continues to be a workable predicate for the exclusionary rule.
In People v Bing, defendant, suspected of a New York burglary, was arrested in Nassau County on an Ohio warrant after a police teletype confirmed that he was wanted for burglary in that State. He had counsel on the pending Ohio charge but the police, though alerted by the outstanding bench warrant, made no inquiry about the representation when they called Ohio to confirm the warrant or when questioning defendant. After receiving Miranda warnings defendant waived his right to counsel on the New York charges and admitted his involvement in the Nassau County burglary.
Defendant moved to suppress his statements claiming that because of his representation on the prior pending charge in Ohio his rights had attached indelibly under Bartolomeo and he could not waive them in the absence of counsel. The People urged that a geographical limit should be recognized and that out-of-State charges should not trigger the Bartolomeo right to counsel on New York charges. The courts below agreed and denied suppression.
*336 In People v Cawley, defendant was charged in New York with robbery, second degree. Following his arraignment, with counsel present, he was admitted to bail. He absconded and remained a fugitive until returned to this State on a bench warrant six months later. Upon interrogation by a police officer unaware of the prior representation, defendant waived his Miranda rights and gave inculpatory statements about new, unrelated criminal conduct, confessing not only to a suspected murder and robbery, but also to his involvement in a second murder. Defendant subsequently pleaded guilty to petit larceny in satisfaction of the original robbery charge and received a sentence of 30 days’ imprisonment. Some days after being released, he was arrested on the new charges, waived his rights and again confessed to murder and robbery.
The trial court, relying on Bartolomeo, granted a pretrial motion to suppress the first confession. It also suppressed the confession obtained after disposition of the pending charge, holding it not sufficiently attenuated from the prior unlawful conduct. On appeal, the People contended that defendant relinquished his attorney-client relationship on the pending charge by absconding and failing to maintain contact with his lawyer while gone. The Appellate Division rejected that argument and affirmed, without opinion.
In People v Medina, defendant was convicted of murdering two neighbors. A detective investigating the homicides learned that defendant had recently been released from jail after being held on an assault charge. While questioning him at the scene, the detective asked defendant about the prior case. Defendant told the detective that he had been "let go”. When the detective asked "why?”, Medina replied that he had been "let go” because the complaining witness had failed to appear in court on four separate occasions. The detective concluded that defendant’s case had been dismissed and later, after defendant waived his Miranda rights at the police station, obtained inculpatory statements from him. Defendant moved to suppress the statements claiming that under Bartolomeo he could not waive his rights on the new unrelated crimes because of his representation on the prior charge.
The trial court denied his motion to suppress, finding that although the police knew of the unrelated charge, they reasonably believed it had been dismissed. It also denied defendant’s trial motion to submit the issue of the voluntariness of his statements to the jury pursuant to CPL 60.45 (2) (b) (ii) and 710.70 and our ruling in People v Graham (55 NY2d 144). *337 On appeal the Appellate Division affirmed, with two Justices dissenting. The dissenters believed the statements should have been suppressed under Bartolomeo because the police had failed to make a sufficient effort to determine whether the prior charge had been dismissed but that even if they had, defendant was entitled to have the voluntariness of his statements submitted to the jury (see, People v Medina, 146 AD2d 344). The District Attorney, noting the recurring problems in applying the Bartolomeo rule and its weak jurisprudential foundation, urges that we overrule it.
The rulings sought by the People in these appeals require us to do more than modify the scope of the Bartolomeo rule, as we have done in the past. The exceptions advanced in Bing and Cawley, as compelling as they are under the facts presented, would undercut the basis of the rule by limiting its application solely because of the situs of the attorney-client relationship in Bing and because of the quality of the relationship in Cawley. Presumably, the exception urged in Cawley would require the trial court to inquire into the substantiality of the attorney-client relationship, a matter which has not concerned us in Bartolomeo cases previously, to determine if the suspect could waive a right which we have held indelible once it attaches. Defendant’s proposal in Medina would require us to submit to the jury the question of whether the Bartolomeo right attached to determine whether defendant’s confession was "involuntary” under CPL 710.70 (3). The voluntariness of defendant’s statement, however, is irrelevant to the application of the Bartolomeo rule. Concededly, his waiver and statements were voluntary. The question is whether defendant’s derivative right had indelibly attached so that he could not waive it in the absence of counsel.
The appeals demonstrate graphically the recurring problems we have had with the Bartolomeo rule. When it is applied to the circumstances in each case, the result is not only unworkable but it imposes an unacceptable burden on law enforcement. Nor can the results be avoided by modifying or creating exceptions to the rule without undermining its rationale. We conclude, therefore, that a fundamental change is required and, notwithstanding compelling concerns of starq decisis, we hold that People v Bartolomeo should be overruled.
I
The doctrine of stare decisis provides that once a court has *338 decided a legal issue, subsequent appeals presenting similar facts should be decided in conformity with the earlier decision. Its purpose is to promote efficiency and provide guidance and consistency in future cases by recognizing that legal questions, once settled, should not be reexamined every time they are presented. The doctrine also rests upon the principle that a court is an institution, not merely a collection of individuals, and that governing rules of law do not change merely because the personnel of the court changes.
Precedents remain precedents, however, not because they are established but because they serve the underlying " 'nature and object of the law itself ”, reason and the power to advance justice (see, Von Moschzisker, Stare Decisis in Courts of Last Resort, 37 Harv L Rev 409, 414). As Justice Frankfurter observed, "stare decisis is a principle of policy and not a mechanical formula of adherence to the latest decision, however recent and questionable” (Helvering v Hal-lock, 309 US 106, 119). Although a court should be slow to overrule its precedents, there is little reason to avoid doing so when persuaded by the "lessons of experience and the force of better reasoning” (Burnet v Coronado Oil & Gas Co., 285 US 393, 407-408 [Brandeis, J., dissenting]; see also, People v Hobson, 39 NY2d 479, 488-489; see generally, Wachtler, Stare Decisis and a Changing New York Court of Appeals, 59 St John’s L Rev 445, 453). This is especially so in constitutional interpretation where legislative change is practically impossible.
An examination of People v Bartolomeo, its antecedents and the experience of the courts in applying it, demonstrates that overruling it is consistent with these principles and required by sound policy. Recognizing our obligation to justify so significant a change, however, we explain our reasons in some detail.
II
Analysis starts with the legal basis for our rules. The Right to Counsel Clause in the State Constitution is more restrictive than that guaranteed by the Sixth Amendment to the United States Constitution (compare, NY Const, art I, § 6, with US Const 6th, 14th Amends).[1] Nevertheless, by resting the right *339 upon this State’s constitutional provisions guaranteeing the privilege against self-incrimination, the right to assistance of counsel and due process of law we have provided protection to accuseds far more expansive than the Federal counterpart (see, People v Davis, 75 NY2d 517, 521; People v Hobson, 39 NY2d 479, 483-484, supra).
There are two well-defined situations in which the right is said to attach indelibly under the State Constitution and a waiver, notwithstanding the client’s right to waive generally, will not be recognized unless made in the presence of counsel. The first, similar to the Federal right (see, Kirby v Illinois, 406 US 682), deals with waivers after formal proceedings have commenced (People v Samuels, 49 NY2d 218; People v Cunningham, 49 NY2d 203, 208; People v Settles, 46 NY2d 154). The second, recognized only in New York, relates to uncharged individuals in custody who have retained or requested an attorney. Police authorities may not question them in the absence of counsel (People v Hobson, 39 NY2d 479, 481, supra; People v Arthur, 22 NY2d 325, 329; see, People v Skinner, 52 NY2d 24, 26).
The scope of these rules is seemingly far removed from the language of the State Constitution but they are said to rest on notions of common sense and fairness and, by requiring the presence of counsel, "[breathe] life into the requirement that a waiver of a constitutional right must be competent, intelligent and voluntary” (People v Hobson, supra, at 484; see, People v Davis, 75 NY2d 517, supra). The rules are also supported by the Code of Professional Responsibility which forbids lawyers from "[c]ommunicat[ing] or caus[ing] another to communicate on the subject of the representation with a party he knows to be represented by a lawyer in that matter” without the prior consent of the party’s lawyer (see, DR 7-104 [A] [1]; see also, People v Davis, supra; People v Skinner, supra, at 29-30; People v Hobson, supra, at 484). We have applied that proscription, by analogy, to officials of the State in criminal proceedings. Underlying all these considerations is a recognition of the imbalance between a suspect and the agents of the State, the coercive influences the State may bring to bear on one suspected of crime and acknowledgement that a party who has expressed the inability to deal with those forces without legal *340 help is entitled to have help available without State interference (see, People v Rogers, 48 NY2d 167, 173).
Notwithstanding these rules, however, it had been understood in the past that the right to counsel did not require exclusion of statements made to police in response to inquiries about crimes unrelated to those on which the suspect had representation (People v Taylor, 27 NY2d 327, 330-332; see also, People v Ramos, 40 NY2d 610, 616-617; People v Hobson, 39 NY2d 479, 483, supra; People v Hetherington, 27 NY2d 242, 245; People v Stanley, 15 NY2d 30, 32-33, cert dismissed 382 US 802).
We modified the Taylor rule somewhat in People v Rogers (48 NY2d 167, supra). In that case, defendant, after being taken into custody for robbery, told the police that he was represented by counsel. Nonetheless, the police interrogated him about the robbery for two hours until his attorney telephoned and directed that interrogation cease. The police then simply shifted the focus and questioned Rogers about unrelated crimes. Shortly after the four-hour interrogation was over, defendant made an allegedly spontaneous statement about the robbery on which he was represented.
Our holding, contained in the very first sentences of the opinion, emphasized that since defendant was represented on the charge on which he was held in custody, he could not be interrogated in the absence of counsel on any matter, whether related or unrelated to the subject of the representation (id., at 169). We concluded that the statement was anything but spontaneous and had resulted from exploiting custody on the crime on which Rogers had counsel. The court recognized the Taylor rule permitting questioning on unrelated charges but cited recent refinements to that rule precluding interrogation on either charge in the absence of counsel where the charges were sufficiently related (see, People v Carl, 46 NY2d 806, 807; see also, People v Ermo, 47 NY2d 863, 865; People v Townes, 41 NY2d 97, 104; People v Ramos, 40 NY2d 610, 617). Under such circumstances, the Taylor rule necessarily gave way to insure that questioning stopped and "accidental” interference with the established lawyer-client relationship was avoided.
In February 1981, only four months before Bartolomeo was handed down, we ruled that the existence of a pending criminal case upon which defendant’s right to counsel had attached did not bar the police from questioning defendant on new unrelated charges when he was not, in fact, represented on *341 the pending charge (People v Kazmarick, 52 NY2d 322). In Kazmarick, an arrest warrant was issued for defendant on a shoplifting charge. Police subsequently questioned him on a murder charge and he gave an inculpatory statement concerning the murder. No attempt had been made to execute the shoplifting warrant, but we recognized that the filing of the accusatory instrument triggered a right to counsel with respect to that charge (see, People v Settles, 46 NY2d 154, 165, supra). Nevertheless, consistent with the Taylor rule, we refused to recognize an indelible right to counsel on the new, unrelated murder charge, noting that "[n]one of our decisions go so far * * * as to hold the police bound because they had reason to know of another charge on which defendant’s right to counsel has attached” (52 NY2d, at 328-329 [emphasis in original]).
Ill
It was against this background that the court in June 1981 issued its decision prohibiting the police from questioning a suspect not only on the pending charge, on which the right to counsel had attached, but also on a new, unrelated charge under investigation on which defendant had waived the right to counsel (People v Bartolomeo, 53 NY2d 225, supra; see also, People v Miller, 54 NY2d 616). In Bartolomeo, defendant was taken into custody during a murder investigation. He had been arrested nine days earlier on an arson charge and, although the police were unaware of it, he had retained counsel on that charge. Defendant voluntarily waived his Miranda rights and made statements incriminating himself in the murder. The courts below, applying settled law, found no fault with the questioning on the murder after defendant had made a valid waiver of his rights but we vacated the conviction and ordered the statements suppressed.
Our decision left a number of unanswered questions. Why, for example, if the rule created a remedy to protect only rights in the pending case and not on the new charge, was not exclusion solely in the pending case adequate protection? Conversely, if exclusion was required to protect an independent right to counsel with respect to the new crime, there was no explanation of why Rogers should be expanded so dramatically to protect a suspect against self-incrimination on the new crime unrelated to the matter upon which defendant actually obtained representation. Moreover, the decision did *342 not explain why a rule requiring the presence of counsel to waive one’s rights before criminal proceedings have been instituted, which is well beyond even the most generous reading of the State constitutional privilege against self-incrimination, was necessary. The first-time arrestee, with no criminal experience, may waive his rights and be questioned without the presence of counsel. Miranda v Arizona (384 US 436) requires only a warning of the right to counsel, not the actual presence of counsel (see, People v Davis, 75 NY2d 517, 522-523, supra; see also, People v Gary, 31 NY2d 68). Why then should the second-time offender, who presumably has received prior advice on how to deal with the authorities and has voluntarily chosen a different course of action on the new charge, be foreclosed from waiving his rights on the matter for which he was detained? As the dissenters noted, the court, without apparent reason, had provided "a dispensation” for persistent offenders for it is the common criminal, not the first-time offender, who will nearly always have representation on a pending charge and thus be immunized from questioning in subsequent investigations (see, People v Bartolomeo, 53 NY2d 225, 236-239, supra [Wachtler, J., dissenting]). Moreover, the decision was not only irreconcilable with the court’s recent decision in Kazmarick but also served to extend other prior cases well beyond their intended scope (id.). It could not be justified on the ground that the pending charges were related to the new charges (see, People v Carl, 46 NY2d 806, supra; People v Townes, 41 NY2d 97, supra) or because the police had been advised they should avoid questioning defendant or knew counsel had been retained (see, People v Carl, supra; People v Ramos, supra).
This failure to elaborate the basis for the rule, and the questionable policy behind it, were to cause considerable difficulty in subsequent cases as the court tried to integrate the decision into existing law. Its application became uneven, introducing uncertainty into the rule itself and destabilizing the law on the right to counsel in general. Apparently, one motivation for the decision was the belief that because of the short interval between the arson arrest and the murder investigation the police either did or should have viewed the crimes together. Even this rationale became attenuated, however, when the court extended the rule to cover charges lodged many months earlier (see, People v Smith, 54 NY2d 954, 955).
Decisions after Bartolomeo demonstrate our efforts to limit *343 the rule to better balance the benefits of evenhanded administration of the criminal law with the cost the rule exacted from effective law enforcement. Thus, we modified the requirement that police aware of a prior outstanding charge must be held to knowledge that a reasonable inquiry would have disclosed by subsequently ruling that actual knowledge of the pending charge was required before defendant’s derivative right to counsel had been violated (see, e.g., People v Bertolo, 65 NY2d 111, 112; People v Fuschino, 59 NY2d 91, 98; People v Servidlo, 54 NY2d 951, 953 [no reason to believe there was deliberate oversight on part of police "even though (the charges) were pending within the same county and presumably the same department and were but two and one-half months old”]). We also placed the burden of proving police knowledge on the defendant (People v Rosa, 65 NY2d 380, 384) and held that although the police may have a duty to inquire of defendant under some circumstances, they could accept at face value a defendant’s response that he or she is without counsel on prior charges (People v Lucarano, 61 NY2d 138). Although we found these changes necessary to keep the rule within reasonable limits, they elicited the observation from one commentator that if the court was really committed to the Bartolomeo "right”, its subsequent decisions had not helped nourish it (see, Note, Prior Representation and the Duty to Inquire: Breaching New York’s "Once-an-Attorney” Rule, 10 Cardozo L Rev 259, 262 [1988]).
We also found it necessary to limit the rule in several other respects. For example, we held that a defendant in custody, represented by counsel in an unrelated case, had no right to the presence of his attorney before being placed in a lineup (People v Hawkins, 55 NY2d 474, 485, cert denied 459 US 846; see also, People v Hernandez, 70 NY2d 833) and that police may eavesdrop on conversations between an informer and a suspect who has counsel on a pending charge (People v Hauswirth, 60 NY2d 904). In People v Colwell (65 NY2d 883, 885), we refused to suppress statements about a new crime made while a prior crime on which defendant was represented was on appeal. In People v Robles (72 NY2d 689), we refused to suppress statements made by a defendant after the prior pending charges, on which defendant had counsel, were dismissed by the police for the very purpose of interrogating defendant on the new charges (see also, People v Mann, 60 NY2d 792).
It was not until our decision in Robles that a rationale for *344 the rule was stated: the right to counsel on the new charge was derived from representation on a prior pending charge. When the prior charge has been disposed of by dismissal or conviction, the indelible right to counsel disappears and the defendant is capable of waiving counsel on the new charge (see, People v Robles, supra, at 698).
IV
The facts in the three appeals now before us mirror those of Bartolomeo. Defendants had counsel on prior pending charges and the police, although aware of the charges, made no inquiry (or insufficient inquiry, it is claimed in Medina) about representation. They were chargeable with the knowledge that inquiry would have disclosed, however, and by accepting defendants’ waivers and questioning them at a time when they could not waive their rights in the absence of their attorneys, the police violated the defendants’ derivative rights to counsel (see, People v Ferrara, 54 NY2d 498, 507). Thus, the appeals involve no more than a routine application of the Bartolomeo rule and under a strict application of the doctrine of stare decisis, which requires that cases similar to each other be decided the same, defendants’ statements must be suppressed.
The People, however, noting that we approved a substantive exception to the rule for cases on appeal (see, People v Colwell, 65 NY2d 883, supra), would have us add new exceptions in Bing, for pending charges in other States, and in Cawley, for defendants who implicitly relinquish the attorney-client relationship by absconding.
To support these contentions, the People note in Bing that it is more difficult for Ohio counsel to appear and effect a waiver; indeed they question whether attorneys licensed in other States could appear in New York. Surely, if defendant had retained Ohio counsel on the Nassau County charges, however, we would recognize that representation, notwithstanding the lack of admission to the New York Bar or any difficulty counsel might experience in appearing on defendant’s behalf. If we recognize the need to protect a defendant’s independent New York right to counsel, it is difficult to understand why we should refuse to protect his equally important derivative New York right to counsel. It is the New York enforcement agencies that violate the suspect’s rights and thereby discover evidence that they will, almost certainly, deliver to Ohio authorities and ignoring their conduct frus *345 trates this State’s recognized interest in protecting the attorney-client relationship (cf., People v Griminger, 71 NY2d 635, 641 [evidence legally seized pursuant to a warrant valid under Federal law suppressed in a State prosecution because it did not satisfy New York standards]). There is no logical reason to proscribe the police conduct if the pending charge is in New York but permit it if the pending charge is in Ohio.
That leaves as a basis for the exception practical difficulties in determining (1) whether there are pending charges in Ohio and (2) defendant’s representation on those charges. As real as those difficulties may be, they are hardly a principled basis for denying a constitutional right (see, People v Rogers, 48 NY2d 167, 173, supra; People v Settles, 46 NY2d 154, 164, supra; People v Donovan, 13 NY2d 148, 152; but see, People v Krom, 61 NY2d 187 [the emergency exception]). We implicitly recognized as much in earlier decisions requiring the police to engage in a good-faith effort to determine if there was representation on the pending charges (see, People v Bertolo, 65 NY2d 111, 120, supra; People v Lucarano, 61 NY2d 138, 146-148, supra; People v Fuschino, 59 NY2d 91, 98, supra). Moreover, the problems presented by geography in Bing are not significantly different from problems the Nassau police would have encountered if the pending proceedings arose in other parts of New York State, in Buffalo, for example, and may be resolved by a teletype or telephone inquiry. They should not be grounds for limiting a defendant’s constitutional rights.
Furthermore, the suggested remedy in Bing, suppression of the evidence in the trial of the Ohio charge, is precisely the remedy we rejected in People v Bartolomeo (see, 53 NY2d, at 229). If the remedy is inadequate when the pending charges are in New York, it should not be sufficient when the pending charges are out-of-State. The value New York courts place on the rights of a defendant in custody is the significant consideration, not the value the Ohio courts place on them, and it would be inconsistent to refuse protection to defendant and defer to the Ohio courts in this case when in all likelihood Ohio does not recognize a derivative right to counsel.[2]
In Cawley, the District Attorney contends with equal force *346 that a defendant who absconds and never contacts his lawyer during the six months he is a fugitive has terminated the attorney-client relationship. He notes that the only time defendant met his attorney was at arraignment and when returned to the jurisdiction defendant could not remember the name or even whether the attorney was a man or woman. When defendant was given an opportunity to call a lawyer, his only response was, "Who am I going to call?” Based on this, the People assert that defendant had severed the attorney-client relationship and, inasmuch as it no longer existed, there is no special need to protect it.
The Bartolomeo right to counsel is indelible, however, and once it attaches the defendant cannot waive it in the absence of counsel. If a defendant cannot expressly reject counsel, there seems to be little legal basis for a judicial inquiry to determine whether he or she has impliedly done so. For the purposes of Bartolomeo, a defendant is either represented on the prior charge or not.
In sum, the situs of the attorney-client relationship or its attenuation by time and disinterest may present practical concerns but they are legally irrelevant under Bartolomeo. The legal basis for the rule is a derivative right arising from an established attorney-client relationship on prior pending charges. Bing and Cawley had established attorney-client relationships. Thus, they had existing derivative rights. Ignoring the sources of those rights, far from making the Bartolomeo rule more reasonable or workable, erodes the jurisprudential basis on which it rests.
In Medina, we are bound by the factual findings below that the police acted reasonably in interrogating defendant. There remains, however, the procedural problem presented by defendant’s contention that the voluntariness of his statements should have been submitted to the jury pursuant to CPL 60.45 and 710.70. CPL 710.70 (3) gives defendants the right to submit to the jury all claims that a statement was involuntarily made within the meaning of CPL 60.45. The police were guilty of no coercion, however; at worst they took defendant’s statements at a time when his derivative right to counsel had attached without sufficiently investigating whether he had *347 counsel on a prior pending case. "Involuntariness” is not in issue because even if defendant’s statements were voluntarily given after a waiver of Miranda rights, Bartolomeo requires the presence of counsel before such a waiver is effective. However, that is not the thrust of the inquiry authorized by CPL 710.70 and 60.45 (cf., People v Hamlin, 71 NY2d 750, 761 [reasonableness of police conduct in search and seizure matter is not a jury issue]). The concurring Judges see this as only a routine matter but the Judges on the Appellate Division divided 3-2 on the issue, each side writing a lengthy decision to sustain its position.
V
Inasmuch as these appeals fall squarely within Bartolomeo and exceptions cannot be recognized, the question remains whether the rule has become so unworkable that it should be abandoned.
As the People contend in Bing, compliance with Bartolomeo may present an unacceptable obstruction to law enforcement when the predicate attorney-client relationship arises out-of-State. Not only may communications between law enforcement agencies be difficult but substantive and procedural law may vary from State to State and present special difficulties for the New York police. Moreover, if an Ohio charge may serve as a predicate for a derivative right to counsel, so may a pending charge in Timbuktu, thereby compounding the problem. Nor can the rule rationally be applied in Cawley. The defendant there expressed no concern over dealing with the "awesome power of the State” (see, People v Cunningham, 49 NY2d 203, 207, supra; People v Rogers, 48 NY2d 167, 173, supra; dissenting opn, at 351, 352); he voluntarily and knowingly waived his rights. To afford him an indelible right to counsel on the new murder and robbery charges based on the superficial relationship with a lawyer assigned to him for arraignment on the prior charges, presses reason to the limit.
Medina illustrates the procedural anomalies Bartolomeo can produce. Defendant’s statements were unquestionably voluntary. He waived his Miranda rights and spoke to the police and but for Bartolomeo he was legally capable of waiving those rights. Nevertheless, under a literal application of the Criminal Procedure Law, he has a colorable claim for the jury to consider, unrelated to the voluntariness of his statements, i.e., whether the police acting in bad faith violated his deriva *348 tive right to counsel. The Legislature did not address, and could not have anticipated, such an inquiry when it enacted the statute (see, Bellacosa, Practice Commentary, McKinney’s Cons Laws of NY, Book 11A, CPL 60.45).
Bartolomeo’s effect on our jurisprudence is even more troublesome. Even now, after nine years, the Judges considering these cases are sharply divided not merely about how to apply the Bartolomeo rule but about the more fundamental question of whether the facts presented are even encompassed within it. The point is nowhere more evident than in this court where the concurring Judges would deny Bing the benefit of a viable attorney-client relationship, which the rule is supposed to protect, but recognize defendant Cawley’s relationship with his attorney, which is dead. Manifestly, our many decisions in this area have failed to achieve the efficiency, consistency and uniformity in the application of the law which the doctrine of stare decisis seeks to promote.
Nor can Bartolomeo be justified as a matter of policy. As a people we have elected to strike a balance between society’s need to investigate and prosecute crime and the right of individuals to be free from the police intimidation and harassment that can result from it. The Cawley case illustrates, perhaps more vividly than the others, the extraordinary price the rule has exacted from society. The trial court held the inculpatory statements had to be suppressed because of defendant’s representation on the charge from which he had absconded. After the pending charge was resolved by a plea bargain, a subsequent statement was taken from defendant but it also had to be suppressed because not sufficiently attenuated from the statements taken in violation of Bartolomeo (cf., People v Robles, supra). An able and experienced Trial Judge, reluctantly applying Bartolomeo, noted that the statements were voluntary beyond question and that they truthfully and accurately detailed defendant’s complicity in the crimes he committed after absconding. Under Bartolomeo, however, the subsequent robbery and murder charges against Cawley would have to be dismissed for lack of sufficient evidence after the statements were suppressed and his inculpatory statements about the second murder committed while he was at liberty, and on which he had not yet been charged, could not be used in the future.
The right to assistance of counsel is one of the important means of protection against police harassment afforded indi *349 viduals. But the right recognized must rest on some principled basis which justifies its social cost. Bartolomeo has no such basis. It rests on a fictional attorney-client relationship derived from a prior charge and premised on the belief that a lawyer would not refuse to aid his newly charged client. The decision to retain counsel rests with the client, however, not the lawyer (see, People v Davis, supra) and by hypothesis Bartolomeo defendants have waived their right to counsel and chosen not to hire a lawyer to represent them on the new unrelated charges. Indeed, they have done so after receiving the benefit of legal advice and after at least one prior experience dealing with the authorities.[3]
The concurring Judges contend that Bartolomeo is premised on the necessity to have an attorney present to determine whether the interrogation is related to the prior pending charges. If that is so the Bartolomeo court failed to identify that concern as a basis for its decision. But more to the point, the need for a bright-line rule was recognized in Rogers because an attorney had entered the proceeding for which defendant was arrested. We decided that under those circumstances the attorney must be allowed to resolve whether police questioning was related to those charges on which defendant was represented. There is no such requirement in these cases, however, because no attorneys had appeared in the proceedings and defendants voluntarily chose to forego legal representation on the new charges. Thus, there is no basis for the concurrence’s argument that the attorney must be brought into the new proceeding to decide whether the questions are related to the prior charges. The courts are fully capable of protecting the defendants’ rights on both the prior pending charges and the new charges. Moreover, the purposes allegedly furthered by such a bright-line rule are hardly served if we continually create exceptions to it (see also, People v Colwell, 65 NY2d 883, supra).
Finally, permitting questioning on unrelated crimes violates *350 neither the State Constitution nor the ethical principles that concerned us in our prior right to counsel cases (see, People v Krom, 61 NY2d 187, 197-198, supra; People v Skinner, 52 NY2d 24, 29-30, supra; People v Hobson, 39 NY2d 479, 484485, supra; People v Taylor, 27 NY2d 327, supra). The Constitution relates the right to counsel in criminal proceedings to that applying in civil actions (see, NY Const, art I, § 6), but in a civil case an attorney representing a party is not precluded by the disciplinary rule from speaking to an adverse party on an unrelated matter for which the party does not have representation and there is no ethical reason why law enforcement officers should be foreclosed from doing so in a criminal case.
As noted at the outset of this opinion, our right to counsel rules are based on "common sense and fairness” and are intended to "[breathe] life into the requirement that the waiver of a constitutional right [is] competent, intelligent and voluntary” (see, People v Hobson, 39 NY2d, supra, at 484). But there is little to be said for a rule which is not firmly grounded on prior case law, cannot be applied uniformly, favors recidivists over first-time arrestees, and exacts such a heavy cost from the public. We conclude that People v Bartolomeo should be overruled.
We emphasize in closing that although Rogers and Bartolomeo are frequently linked in legal literature and Rogers was the only case cited to support the new rule adopted in Bartolomeo, the two holdings are quite different. In People v Rogers (supra), the right to counsel had been invoked on the charges on which defendant was taken into custody and he and his counsel clearly asserted it. To protect his rights, we established a bright-line rule preventing the police from questioning defendant about those charges or any other charges. In People v Bartolomeo (supra), however, defendant was taken into custody for questioning on a new, unrelated charge. He was not represented on that charge and freely waived his right to counsel. Since the right to counsel is personal and may be waived by a defendant (see, People v Davis, supra), the court had to create an indelible right, a right that defendant could not waive in the absence of counsel, to justify suppression of the voluntary statement. It did so by implying a derivative right arising from the prior pending charges (see, People v Robles, 72 NY2d 689, 698, supra). We find the Bartolomeo rule unworkable, and therefore overrule it, but our decision today should not be understood as retreating from the stated holding of Rogers.
*351 Turning to the disposition of these matters, the courts below found that each defendant had knowingly and voluntarily waived their Miranda rights and that the police questioned solely on matters unrelated to the prior pending charge. In the absence of a Bartolomeo right, the procedural question raised in People v Medina becomes moot.
Accordingly, the orders of the Appellate Division in People v Bing and People v Medina should be affirmed. The order of the Appellate Division in People v Cawley should be reversed, and defendant’s motion to suppress denied.

. New York Constitution, art I, § 6 provides: "In any trial in any court whatever the party accused shall be allowed to appear and defend in person *339 and with counsel as in civil actions and shall be informed of the nature and cause of the accusation and be confronted with the witnesses against him.”

. Several State courts have been asked specifically to apply People v Bartolomeo and each has refused to do so (see, e.g., Commonwealth v Yarris, 519 Pa 571, 549 A2d 513, 524-525 ["emphatically” declining to adopt the Bartolomeo rule]; State v Porter, 210 NJ Super 383, 510 A2d 49, 54; State v Ture, 353 NW2d 502, 511 [Minn]; State v Wolf, 7 Kan App 2d 398, 643 P2d 1101, 1104-1105; Krier v State, 249 Ga 80, 91-92, 287 SE2d 531; State v *346 Claboume, 142 Ariz 335, 690 P2d 54, 60-61; State v Seward, 104 NM 548, 724 P2d 756, 762). The United States Supreme Court rejected similar arguments when interpreting the Sixth and Fourteenth Amendments (see, Maine v Moulton, 474 US 159; Moran v Burbine, 475 US 412).

. According to a 1979 survey of New York County Supreme Court and Criminal Court, the percent of defendants with open cases pending at the time of arrest was 60% in Supreme Court and 57% in Criminal Court (see, Report of District Attorney, County of New York, Robert Morgenthau, District Attorney, Table 1, at 10 [1979], as quoted in Note, The Expanding Right to Counsel in New York, 10 Fordham Urban U 351, 369, n 90). Seventy-seven percent of the District Attorney’s sample of 200 arrestees in Supreme Court had prior arrests. On the average they had been arrested eight times before (see, id., at 372, n 105).