OPINION OF THE COURT
John J. Connell, J.
The defendant, claiming to be aggrieved by an unlawful or improper acquisition of evidence, has moved to suppress a statement made by him on May 3, 1990 to members of the Rochester Police Department on the ground that it was involuntarily made within the meaning of CPL 60.45. A confession or admission is admissible at trial in New York State only if its voluntariness is established by the People beyond a reason *358 able doubt. The defendant also claims that the police lacked probable cause to place him in custody prior to their taking a statement from him.
The defendant, claiming to be aggrieved by an unlawful search and seizure, has moved to suppress physical evidence seized by members of the Rochester Police Department on May 3, 1990. A pretrial suppression hearing was conducted before me on these issues on August 9, 1990.
FINDINGS OF FACT
On April 15, 1990 the defendant was arrested by the Rochester Police Department on charges of criminal mischief in the third degree and attempted grand larceny in the third degree. On May 2, 1990, the District Attorney’s office made application to a Monroe County Court Judge for dismissal of those charges for the following reasons stated in their affidavit: "The defendant is a suspect in a homicide and presently being sought by the police at this time. The pendency of these charges would serve only to inhibit the investigation of the more serious charge.” The affidavit also indicated that the evidence against the defendant on the pending charges was not substantial. On that date, the County Court Judge dismissed the charges and ordered the records sealed pursuant to CPL 160.50.
The murder for which the defendant was being investigated allegedly occurred on April 13, 1990 in the City of Rochester.
By the end of April 1990, Investigator Terrance Coleman of the Rochester Police Department Physical Crimes Unit had developed information linking the defendant to the April 13 incident. By April 28, 1990, Investigator Coleman had been told of the defendant’s involvement in the crime by one of the codefendants, Daniel Williams. Based on the probable cause Investigator Coleman had to arrest the defendant, he circulated a flier to other units of the Rochester Police Department, including the Tactical Unit, requesting that the defendant be picked up for questioning. In response to this request, members of the Rochester Police Department Tactical Unit went to the area of the defendant’s home at 33 Elmhurst Street in the City of Rochester in an attempt to locate him. Officer Joseph McCleany of that unit had reason to believe that the defendant was in his home. Accordingly, he telephoned the defendant’s home and asked to speak to the defendant posing as a friend of the defendant’s. When he was unsuccessful in that *359 attempt, he called a second time and spoke with the defendant’s mother. At that time he identified himself as a police officer and indicated that there was a warrant out for her son. She indicated that he did not live there but that he should be there within a half hour. Within two minutes of that telephone call, Officer McCleany observed the defendant leave his house at approximately 11:30 p.m. He and other officers stopped the defendant outside and asked him to accompany them to the Public Safety Building. He agreed to do so and he was taken uncuffed to the fourth floor of the Public Safety Building.
At approximately 12:15 a.m. Investigator Coleman and Detective Gordon Hall met the defendant at the Physical Crimes office. At that point, Investigator Coleman advised the defendant of his Miranda warnings by reading verbatim from People’s exhibit 3 which was received in evidence. The defendant indicated that he understood his rights and agreed to talk with the investigators. Over the next hour and a half, the defendant made oral statements to the police which were reduced in writing and received as People’s exhibit 4. The defendant appeared to read the statement before signing it and the statement was then read aloud by Investigator Coleman. The defendant indicated that the statement was true and accurate and thereafter signed the statement. At the request of the police, the defendant then gave the police his sneakers for comparison of footprints allegedly left at the scene of the crime. The defendant was given an opportunity to call his girlfriend in an effort to return some of the stolen jewelry from the burglary.
At the time Investigator Coleman spoke with the defendant, he had been advised by the District Attorney’s office that the charges of April 15, 1990 had been dismissed. At no time did the defendant indicate that he wished to have the services of an attorney nor did he ask that the questioning cease. At no time did he indicate that he had pending charges. The police did not force or threaten the defendant in any way to induce him to make the statements to them.
CONCLUSIONS OF LAW
The defendant was properly advised of his Miranda warnings and made a knowing, voluntary and intelligent waiver of those warnings. Although the defendant raised in his motion papers his position that he understood at the time that he was *360 taken into custody the "rule in Bartolomeo and relied upon it”, there was no evidence presented at the hearing of such knowledge at that time. Even if there were such proof offered, the defendant’s understanding of the law on a particular issue does not determine what rights, if any, he actually has waived.
The police properly took the defendant into custody outside his home (Payton v New York, 445 US 573).
Based on the order of the County Court dated May 2, 1990, there were no charges pending against the defendant as of his interview on May 3, 1990. Even if there were those charges pending, People v Bing (76 NY2d 331) specifically overruled People v Bartolomeo (53 NY2d 225). The Court of Appeals in the Bing decision went to great lengths to describe the "unacceptable burden on law enforcement” that Bartolomeo placed (People v Bing, supra, at 337).
Since People v Bing (supra) was decided on July 2, 1990, this court must decide whether or not it should be applied retroactively to the instant case. The United States Supreme Court established guidelines for courts to follow in deciding whether to apply new case law retroactively in Desist v United States (394 US 244). The court is to consider (1) the purpose to be served by the new standards, (2) the extent of the reliance by law enforcement on the old standards and (3) the effect on the administration of justice of a retroactive application of the new standards (Desist v United States, supra, at 249).
The Bing court addressed all three criteria in their decision in referring to the "recurring problems in applying the Bartolomeo rule and weak jurisprudential foundation” (supra, at 337). Therefore, this court does apply the rule retroactively to the instant case and accordingly, denies the motion of the defense to suppress the statements made to the police on May 3, 1990. The defendant’s motion is also denied on the other grounds cited since the police did have ample probable cause to arrest the defendant and pursuant to that arrest, to seize his sneakers as evidence (United States v Ferri, 778 F2d 985).
The defendant’s motions are in all respects denied. This case is now placed on the Trial Calendar.