OPINION OF THE COURT
Michael L. Pesce, J.
The defendant is charged with murder in the second degree, stemming from the February 20, 1989 shooting death of Curtis Sunny. On December 10, 1990 this court held a combined Huntley-Wade hearing. Testifying for the People was Detective *411 Walter Smith; the defendant produced no witnesses. This court finds the testimony of the officer credible and accordingly makes the following findings of fact and conclusions of law.
FACTS
The People called Detective Smith, a 16-year veteran, assigned as investigating officer. He testified that he conducted an interview with an eyewitness on March 19, 1989, and after taking a statement, gave him several books of photos to examine. Included among these books was one known as the Lafayette Gardens book, containing photos of individuals associated with the nearby housing project. The eyewitness referred to an individual with the street name "Rasheem”. According to the officer, he knew of the defendant as "Rah” or "Rasha” and did not associate the two, nor was he familiar with the defendant’s true name. Thus he did not know in advance that the defendant’s photo was contained in the Lafayette Gardens book. In the words of the officer, the witness took less than two minutes to select the defendant’s photo as the person who had ordered the shooting of the deceased.
The defendant was brought in to the precinct by anticrime officers on March 25, 1989. The detective set about preparing a lineup containing the defendant and various fillers. The officer admitted knowing that, at the time of the investigation, the defendant had two homicide indictments pending in Kings County. However, he testified that he believed that the cases had been disposed of or dismissed since the defendant was not incarcerated. The rumor on the street, he said, was that the defendant had beaten his other cases. The officer confirmed that he did not notify counsel or make an inquiry prior to preparing the lineup.
The witness identified the defendant, who had selected his own place in the lineup. The detective advised the defendant that he had been identified and informed him of the charges that would be filed against him. The detective confirmed that, at that point, he considered the defendant to be under arrest.
The defendant was placed in a holding cell. Approximately one-half hour later, he indicated that he wanted to talk to the detective. He was given Miranda warnings and, indicating that he understood, waived his rights and went on to make a statement.
*412 DISCUSSION
The suppression of defendant’s statement presents a complex question. At the time that this incident took place, the issue was governed by People v Bartolomeo (53 NY2d 225 [1981]). That case prohibited law enforcement officials from questioning a suspect with regard to both pending charges on which he was represented by counsel, and any new unrelated charges, unless the right to counsel was properly waived in the presence of counsel (see also, People v Bertolo, 65 NY2d 111 [1985]; People v Lucarano, 61 NY2d 138 [1984]; People v Smith, 54 NY2d 954 [1981]; People v Rogers, 48 NY2d 167 [1979]). The police were required to have actual knowledge of the defendant’s pending cases and his representation by counsel on those cases. (People v Bertolo, supra.)
That rule was changed in July 1990, when the Court of Appeals rendered its decision in People v Bing (76 NY2d 331). Bing, calling Bartolomeo (supra) unworkable, held that a defendant’s representation by counsel on pending charges does not prevent him from waiving his rights on the new unrelated charges.
Almost immediately, the Appellate Division, Second Department, without discussion, began to apply Bing (supra) retroactively to cases where the incidents occurred prior to the change in the law (see, e.g., People v Blount, 163 AD2d 483; People v Belgenio, 164 AD2d 865; People v Perini, 166 AD2d 466; People v Goodman, 166 AD2d 541; People v McEachern, 166 AD2d 614). However, this court believes that some discussion of the issue is appropriate.
Reversals and modifications of existing principles of law have often led the United States Supreme Court to consider their prospective or retroactive application. Since its 1965 decision in Linkletter v Walker (381 US 618, 629), in which the Supreme Court concluded "that the Constitution neither prohibits nor requires” retroactive application of changing rules, the courts have attempted to organize an otherwise confusing array of cases into a number of general guidelines.
In United States v Johnson (457 US 537), the court designated three categories of cases where retroactivity might be in issue. First, in cases where the court (supra, at 549) "merely * * * applied settled precedents to new and different factual situations”, rules set forth in those cases would be applied retroactively. The same result would occur when the court determined (supra, at 550) "that a trial court lacked authority *413 to convict or punish a criminal defendant in the first place”, in which retroactivity merely recognizes that any earlier prosecution or sentence was a nullity. It is only where the court has "expressly declared a rule of criminal procedure to be 'a clear break with the past’ ” that its application will be prospective (supra, at 549, citing Desist v United States, 394 US 244).
Subsequently, the Supreme Court in Griffith v Kentucky (479 US 314 [1987]) held that new rules were to be applied retroactively to all cases not final. (See also, People v Graham, 140 Misc 2d 417 [Sup Ct, Kings County 1988].) This was echoed by the Court of Appeals, which noted in People v Catalanotte (72 NY2d 641, 645), that a defendant is entitled to the benefit of a change in the law if said change occurs before the conviction is final (citing Griffith v Kentucky, supra).
This court is of the opinion that there is a significant difference between a change in the law which inures to the benefit of a defendant and one which represents a diminution of that defendant’s constitutional protection. The effect of the Bing decision (supra) is to curtail a defendant’s right to counsel (albeit a derivative right). Notwithstanding this court’s general agreement with the need for the change enunciated in Bing, it seems that, under those circumstances, the "clear break” analysis should be applied.
In Bing (supra), the Court of Appeals noted the problems faced by law enforcement in negotiating the maze of right to counsel issues created by Bartolomeo (supra). The court held that "a fundamental change is required and, notwithstanding compelling concerns of stare decisis, we hold that People v Bartolomeo should be overruled.” (Supra, at 337; emphasis added.) The court further recognized that, while overruling Bartolomeo was "consistent with these principles [of stare decisis] and required by sound policy”, it is nonetheless compelled to "justify so significant a change” (supra, at 338; emphasis added). It seems to this court that there can be no clearer statement of the court’s intent.
This court believes that cases subsequent to Bartolomeo (supra), narrowing its focus to matters where law enforcement officials have actual knowledge of a defendant’s representation (e.g., People v Bertolo, supra; People v Rosa, 65 NY2d 380 [1985]; People v Fuschino, 59 NY2d 91 [1983]), do not represent a trend in which Bing (supra) would be merely the next logical step. This represents, instead, a fundamental change in *414 the fact-finding process and a more restrictive application of New York’s right to counsel rule.
This court believes, based on the foregoing, that the rule enunciated in People v Bing (supra) should be applied prospectively. The factual circumstances of this case, too, cry out for resolution under the rule of Bartolomeo (supra), representing exactly the sort of abuse the latter case intended to address. The officers here knew that the defendant had pending homicides. They admitted making no inquiry whatsoever. It strains credibility to suggest that experienced officers would "assume” that a defendant had beaten two cases merely because he was not incarcerated. The officers here had no knowledge, but in truth, they didn’t wish to know. They deliberately avoided asking the obvious question, for fear that the defendant’s response would put them on notice and require them to cease questioning.
The defendant’s waiver of his Miranda rights was invalid as it was made outside the presence of counsel and, accordingly, that portion of defendant’s motion should be granted and the statement suppressed.
[Portions of opinion omitted for purposes of publication.]