OPINION OF THE COURT
Martin Marcus, J.
In People v Bartolomeo (53 NY2d 225 [1984]), the New York Court of Appeals announced that a person held in custody on *942 one charge and represented by counsel on a pending and unrelated matter could not be questioned about the new charge in the absence of counsel. Six years later, in People v Bing (76 NY2d 331 [1990]), the Court abandoned this rule as unjustified and unworkable. Nonetheless, the law of this State —before and after Bing — is that a person may not be questioned in the absence of counsel about a charge "related” to a pending matter on which that person has counsel. As long as the Bartolomeo rule lasted, it did not matter whether a pending case was related or unrelated to a defendant’s new charge, since in either case the defendant’s "indelible” (i.e., unwaivable) right to counsel attached. With Bartolomeo now overruled, however, whether or not a new charge is "related” to a pending one has taken on a renewed importance. In this case, the defendant’s motion to suppress statements he made in the absence of counsel tests how distinct and distant a "related” case may be. Because I find that the new charge here was not sufficiently related to the pending case on which the defendant had counsel, his motion to suppress on these grounds is denied.
A Huntley hearing was held on May 15 and May 18, 1992. At the hearing Detective Glenn Mariani of the New York City Transit Police testified for the People; the defendant called no witnesses. After the hearing, and after several requested adjournments, the parties submitted lengthy memoranda of law. In his papers, the defendant argues that his statements should be suppressed because he had counsel on a prior pending and related case.[1]
THE DEFENDANT’S "RELATED” CASE
The basic facts of the defendant’s prior representation are not in dispute. Over a period of approximately three months, the defendant was accused of engaging in unlawful conduct directed against Norma Martinez on three separate occasions. He was represented by counsel and arraigned on charges arising out of the first of these three incidents months before he was arrested and questioned in the absence of counsel on the latter two. He now moves to suppress the statements he *943 made about the second incident, from which the present indictment arises. He claims that because he was represented on the charges arising out of the first incident, the police were precluded from questioning him in the absence of counsel about the second.
In the first incident, on May 15, 1991 (hereinafter the May incident), the defendant allegedly pushed Ms. Martinez against a wall at the 14th Street and Union Square subway station in New York County. Based upon her complaint, the defendant was arrested by Transit Police Officer John Kelly and charged with attempted assault, harassment and criminal possession of a weapon in the fourth degree. The defendant was represented by counsel at his subsequent arraignment, and an order of protection was issued directing him to stay away from Ms. Martinez.
In the second incident, on July 3, 1991 (hereinafter referred to as the July incident), in the vicinity of 346 Powers Street in the Bronx, the defendant is alleged to have slashed Ms. Martinez in the face with a piece of glass. Based upon these allegations, the present indictment was returned against the defendant, charging him with assault in the first and second degrees and criminal possession of a weapon in the fourth degree.
On August 23, 1991, Ms. Martinez filed a third complaint against the defendant, charging him with having menaced her. This last incident, hereinafter referred to as the "August incident,” allegedly occurred at the same location as the first, the 14th Street and Union Square subway.
As an officer of the Transit Police, Detective Mariani is responsible for the investigation of cases (like the May and August incidents) occurring on Transit Authority property. At the hearing, Detective Mariani testified that late in August of 1991, he was assigned to the investigation of the August incident. In connection with the investigation, he obtained copies of the July and August complaints, and read in the complaint report for the August incident that Ms. Martinez "already ha[d] an order of protection on perp, 91N3044043, taken out in New York County before Judge Kahn on assault.” A couple of days before August 29, 1991, Detective Mariani spoke by telephone to Ms. Martinez, who gave him information concerning both the July and August incidents. Detective Mariani testified that he knew the May incident only to concern an order of protection and not necessarily a *944 criminal case. About the May incident, Detective Mariani recalled Ms. Martinez saying only that the order of protection previously issued in May had since expired.
On August 29, 1991, Detective Mariani took Ms. Martinez to Lexington Avenue and 125th Street, where Ms. Martinez had told him the defendant could be found. There she pointed out the defendant on the street in front of a methadone clinic, identifying him as the person who had menaced her on the subway in August and slashed her face in July. The following day, August 30th, Detective Mariani, accompanied by Detective Costello, returned to the clinic without the complainant. Detective Mariani approached the defendant and asked him if he was Edriz Marin. The defendant said he was and produced identification with his name on it. At that point, Detective Mariani placed the defendant under arrest and took him to a Transit Authority station. At the station, without the presence of an attorney, the defendant was read his Miranda rights, waived them, and made statements concerning the July and August incidents. The defendant was not asked any questions about the May incident, and he made no statements relating to it.
THE "RELATED” CASE RULE
In its interpretation of article I, § 6 of the New York State Constitution, the New York Court of Appeals has consistently afforded defendants a right to counsel far more extensive than that derived from the Federal Constitution. (See, People v Bing, 76 NY2d 331, 338-339 [1990], supra.) In People v Bartolomeo (53 NY2d 225 [1984], supra), the Court went so far as to hold that when a suspect represented by counsel on a prior pending charge is held in custody on a new and unrelated one, he may not be asked to waive the right to counsel and answer questions on the new charge unless counsel is present. More recently, however, the Court of Appeals overruled the Bartolomeo rule, concluding that it was "not firmly grounded on prior case law, [could not] be applied uniformly, favor[ed] recidivists over first-time arrestees, and exact[ed] * * * a heavy cost from the public.” (People v Bing, 76 NY2d, at 350.)
While Bing (supra) thus authorized uncounseled custodial interrogation of defendants on charges unrelated to those on which counsel had previously been obtained, the decision left intact another and earlier line of cases which prohibited such *945 questioning if the defendant had counsel on a pending matter related to that for which the defendant was to be questioned. (See, People v Bing, 76 NY2d, at 340, 342.)[2] Here, of course, the defendant’s pending case was in some sense "related” to the one for which he was questioned and now stands indicted, since both concerned the same complainant and the new case arose within two months of the first. The question remains, however, whether the relationship between them is sufficiently close so that the prior entrance of counsel on the first case precluded uncounseled questioning on the second.
On several occasions prior to the decision in Bartolomeo (supra), the Court of Appeals held that a defendant’s right to counsel had been abridged because he had counsel on a pending "related” matter. In People v Vella (21 NY2d 249 [1967]), the new crime, although conceptually separate from the pending one, arose out of the same criminal transaction. There the defendant was represented by counsel at his arraignment for criminally receiving stolen property. Released from custody after the arraignment, he was immediately arrested by the police and questioned, in the absence of counsel, concerning the theft of the same property he had just been arraigned for allegedly possessing. The Court held that questioning impermissible.
Similarly, in People v Townes (41 NY2d 979 [1976]), the defendant filed a complaint with the Civilian Complaint Review Board concerning his arrest on a case for which he had counsel. Interviewed in the absence of counsel by a police officer investigating his complaint on behalf of the Board, the defendant confessed to the crime. On appeal, the Court found error in the denial of the defendant’s motion to suppress the confession, reasoning that, "the subject of the interrogation and the subject of the criminal charges are so inextricably interwoven in terms of both their temporal proximity and factual interrelationship as to render unavoidable the conclusion that any interrogation concerning the arrest would almost inevitably involve some potentially incriminating discus *946 sion of the facts of the crime itself.” (People v Townes, 41 NY2d, at 104.)[3]
In People v Carl (46 NY2d 800 [1978]), the Court extended the application of the rule to a situation in which the defendant’s two cases were not (as in Vella [supra] and Townes [supra]) part of the same incident or criminal transaction, but instead were related by the proximity of the underlying incidents in time and location, and by the decision of the District Attorney to prosecute them together in the same accusatory instrument. The defendant in Carl was charged with burglary in one case and attempted burglary in another, the two incidents having allegedly occurred at the same location a little more than a week apart. In the first case, the defendant had counsel, who notified the Sheriff of his assignment and directed that the defendant not be questioned without counsel present. Nonetheless, the police interrogated the defendant about the second incident. Evidence of the two incidents was then presented together to the same Grand Jury, which returned a single indictment charging the defendant with both crimes. Under these circumstances, the Court of Appeals held that uncounseled interrogation on the second charge was precluded because it was "sufficiently related” to the charge for which the defendant had already been assigned counsel. (People v Carl, 46 NY2d, at 808.)
Here the connection between the two cases is more remote. First, unlike in Vella (supra) and Townes (supra), they do not arise out of the same criminal incident or transaction. Second, while the May and July charges do share a common complainant, the crimes are alleged to have been committed not — as in Carl (supra) — within a week of each other and at the same location, but almost two months apart and in two different counties. Third, the officer here had no actual knowledge of the prior pending case, and had certainly not received instructions from an attorney not to speak to the defendant in the *947 absence of counsel.[4] Fourth, unlike in Carl, evidence of the May incident, which occurred in Manhattan, was not presented to the Bronx Grand Jury that returned this indictment. Fifth, it was clear — even prior to the defendant’s filing of this motion — that the People also had no intention of offering evidence of the May incident at trial.[5] Finally, here, unlike in Townes (supra), the May and July incidents are not "so inextricably interwoven in terms of both their temporal proximity and factual interrelationship” as to make questioning concerning the July incident "inevitably involve some potentially incriminating discussion” of the one in May. (People v Townes, 41 NY2d, at 104.) Indeed, Detective Mariani questioned the defendant only about the incidents in July and August, and learned nothing relevant to what allegedly occurred in May.
Bing (supra), of course, is not dispositive of the outcome of this case. Nonetheless, the factors which led the Court of Appeals to overrule Bartolomeo (supra) do have relevance in determining whether the "related case” rule should be extended to cases with a relationship as tenuous as that here. So far the Court has applied the "related case” rule only when *948 the two “related” matters were “inextricably interwoven” with each other. Thus, an extension of the rule to cases where the relationship is no more than that of a common complainant would, like Bartolomeo, "not [be] firmly grounded on prior case law.” (People v Bing, 76 NY2d, at 350.) Moreover, if a common complainant alone were sufficient to invoke the rule, other kinds of commonalities (e.g., a similar modus operandi) might trigger it as well. The result would be, as with Bartolomeo, to “favor recidivists over first-time arrestees” (People v Bing, 76 NY2d, at 350); to introduce, as Bartolomeo did, uncertainties and inequalities in the rule’s application (People v Bing, 76 NY2d, at 342);[6] and like Bartolomeo, to exact without justification a "heavy cost from the public.” (76 NY2d, at 350.)[7]
For all these reasons, the connection between the May and July incidents is insufficient to require the extension of the rule to the facts of this case. Accordingly, the fact that the defendant was represented by counsel on the charges arising *949 out of the May incident does not require suppression of the uncounseled statements he made about the July incident which the People now intend to offer at trial. Thus, the defendant’s motion to suppress those statements is denied.

. The defendant also argued that the waiver of his Miranda rights was involuntary and that alleged defects in the notice the People served upon him of their intention to offer the statements in evidence require their preclusion. In portions of this opinion excluded for purposes of publication, the court considered and rejected these contentions.

. Yet another line of cases precludes a defendant in custody and represented on one case from being questioned in the absence of counsel about either that case or about another case in which he is not represented. (People v Rogers, 48 NY2d 167 [1979]; see, People v Bing, 76 NY2d 331, 350, supra ["We emphasize in closing that although Rogers and Bartolomeo are frequently linked in legal literature and Rogers was the only case cited to support the new rule adopted in Bartolomeo, the two holdings are quite different”].)

. See also, People v Goldfinger, 149 Misc 2d 765 (Sup Ct, NY County 1991) (knowledge that defendant had counsel in a civil RICO suit filed against him which included allegations then being investigated by the District Attorney precluded surreptitious questioning of defendant concerning those allegations in absence of counsel); People v Steele, 113 Misc 2d 658 (Sup Ct, NY County 1982) (knowledge that defendant was represented by counsel at administrative hearing conducted by the licensing division of police department triggered defendant’s right to counsel in criminal investigation of same conduct that was subject of the hearing).

. While Detective Mariani conceded that he knew a temporary order of protection had been issued in May, he credibly testified that he did not know that the order was issued in connection with a pending criminal charge. Such an order is not, in fact, dependent upon the existence of a criminal case. (See, e.g., Family Ct Act §§ 153-c, 842,1056; cf., CPL 530.13 [1] ["When any criminal action is pending * * * the court * * * may for good cause shown issue a temporary order of protection”].) Even if the law permitted such an order only to issue in connection with a criminal case, and even if Detective Mariani knew of this requirement, Ms. Martinez told him that the order of protection had expired. Thus, he had no reason to believe that if any criminal charge had existed that it was still pending. The defendant argues that knowledge of the pending charge should be imputed to Detective Mariani from his awareness of the temporary order of protection. However, the entire line of cases considering whether and when knowledge of a pending case should be imputed to the police arose only in the application of the now defunct Bartolomeo rule. They have no relevance after Bing (supra), which specifically pointed to the uncertainties they introduced into the law as one of the justifications for overruling Bartolomeo (supra). (See, People v Bing, 76 NY2d, at 342-343.)

. In a letter dated November 7, 1991, in response to an informal oral discovery request from the defendant’s attorney, Nicholas Frisco, Esq., Assistant District Attorney Heinzmann advised the defendant that "The People do not plan to introduce any prior criminal conduct under a Molineux theory.” (Cf., People v Maher, NYLJ, Nov. 12, 1991, at 36, col 4 [Sup Ct, Suffolk County] ["By moving for permission to introduce these previous crimes (against the same victim) in their direct case, the People have acknowledged the relationship between the offenses”].)

. Indeed, in his brief the defendant appears to argue that one crime is "related” to a second whenever under People v Molineux (168 NY 264 [1901]), it may be offered as direct evidence in the trial of the second case. In support of his claim, he presents particular eases in which Molineux was held to permit the introduction at the trial of a defendant for one assault upon his wife evidence of a prior and less serious assault not charged in the indictment. Of course, before deciding whether to admit Molineux evidence, a court is provided with the details of the crime for which the defendant is on trial and of the prior crime the People seek to offer in evidence. It may also be told the nature of the defense to be presented to the jury. With this knowledge, the court can — after reviewing the applicable precedents- — make a reasoned determination of the relevance of the uncharged crime to the one for which the defendant is on trial. In contrast, a police officer is unlikely to have the same detailed knowledge of the crimes and will never have the court’s legal expertise. Thus, in order to resolve whether the defendant has an unwaivable right to have counsel present, the officer would be left in an uncertain and untenable position, forced to determine in the precinct how a Judge might later rule on a sensitive and complex evidentiary question at trial.

. As the Court said in Bing (supra), "The right to assistance of counsel is one of the important means of protection against police harassment afforded individuals. But the right recognized must rest on some principled basis which justifies its social cost. Bartolomeo has no such basis. It rests on a fictional attorney-client relationship derived from a prior charge and premised on the belief that a lawyer would not refuse to aid his newly charged client. The decision to retain counsel rests with the client, however, not the lawyer * * * and by hypothesis Bartolomeo defendants have waived their right to counsel and chosen not to hire a lawyer to represent them on the new unrelated charges. Indeed, they have done so after receiving the benefit of legal advice and after at least one prior experience dealing with the authorities.” (76 NY2d, at 348-349.)