Simons, J.
(concurring). I concur fully in Judge Ciparick’s opinion to affirm. I write separately only to address the dissent.
The statutes regulating submissions to deliberating juries (CPL 310.20, 310.30) were enacted in 1970. In the last eight years we have construed and applied them at least nine times, holding in each case — except one dealing with delivery to the jury of a copy of the indictment (People v Moore, 71 NY2d 684) — that furnishing materials to the jury without the consent of counsel was error. These decisions were unanimous with little discussion required. One can only marvel, therefore, at a dissent, written by a Judge who joined in all of those decisions, which takes this Court, as well as the Appellate Division, to task for following them and urges that the two most recent ones should be overruled. The arguments advanced for doing so fail to overcome the demands of stare decisis or recognize the need to maintain the legitimacy of the Court’s decision-making process.
Stare decisis is the doctrine which holds that common-law decisions should stand as precedents for guidance in cases arising in the future, that a point of law, once decided by a court, will generally be followed in subsequent cases presenting the same legal problem. The doctrine rests upon considerations of practicality and principle.
From a practical viewpoint, it cannot be seriously argued that a court should reexamine every relevant precedent that has gone before. It could hardly do its work if it did so. As Justice Cardozo put it:
"[T]he labor of judges would be increased almost to the breaking point if every past decision could be reopened in every case, and one could not lay one’s own course of bricks on the secure foundation of the courses laid by others who had gone before him” (Cardozo, Nature of the Judicial Process, at 149).
As a matter of principle, stare decisis is accepted for two reasons. First, following precedent enhances stability in the law because the failure of a court to settle on a rule invites perpetual attack and reexamination, with the real possibility *489 that governing rules will change whenever the composition of the Court changes. It is rare that all members of the Court fully agree on a particular subject and it is more important that there be a predictable rule to govern conduct than that the rule be "right” (see, Burnet v Coronado Oil & Gas Co., 285 US 393, 406 [Brandéis, J., dissenting]). Any other course can lead to anarchy as trial courts and intermediate appellate courts, who must apply the law as we declare it, speculate on what our latest view on the subject will be. For this reason alone, Judges have an institutional obligation to respect the doctrine and abide by it (see, Robbins v California, 453 US 420, 436, n 4 [Powell, J., concurring]; see also, Planned Parenthood v Casey, 505 US 833, 854-869). Moreover, the reiteration of arguments against the rule after they have been considered and rejected several times permits an unwarranted inference by the Bar and public that those rules remain open to debate.
Further, and most importantly, stare decisis is a rule of legitimacy. Courts, unlike the other two branches of government, do not derive their authority by electoral mandate and they are not expected to respond to the popular will or public emotions. Indeed, their influence rests in large part upon the understanding that unelected Judges are motivated by principle and that they exercise their power evenhandedly, setting aside personal views and extraneous influences to follow precedents and develop the law in an ordered fashion. The concept of legitimacy is fundamental to the exercise of judicial power, for the courts have little to compel adherence to their decisions except the respect accorded to them by the public borne of the integrity of the decision-making process. A high court which uniformly adheres to its prior interpretation of a statute in a line of cases only to reconsider those precedents and overrule them in a legally indistinguishable but factually egregious case will surely and deservedly lose its credibility and provoke serious questions about the legitimacy of its processes.
Stare decisis is not an inflexible doctrine, of course, and rules long settled but not recently revisited are always open to reexamination if there is some evidence that the policy concerns underlying them are outdated or if they have proved unworkable (see, People v Bing, 76 NY2d 331; People v Hobson, 39 NY2d 479).
There is nothing outdated, however, about the rule under consideration here. It was formulated by the Legislature, not this Court, and remains a part of our statutory law. We merely *490 interpreted, the statute and applied it to the cases before us. There is no evidence that our interpretation is contrary to the legislative purpose underlying the statute, that it is unworkable or that, when properly applied, it imposes any hardship on litigants or the trial courts. Though some may disapprove of the statute (indeed, the court system itself has invited proposals for legislative reform of the rule),* it remains in force without any apparent disposition by legislators to amend it. We may assume from this that the Legislature agrees with our interpretation. If it did not it could have amended the statute long ago. Certainly, that opportunity remains available now.
To justify its suggestion that we should overrule recent precedents, the dissent relies upon People v Hobson (39 NY2d 479, supra), the errant footstep case, and People v Bing (76 NY2d 331, supra). Those cases involved constitutional issues, an area in which a court may more readily consider change, and in some cases must necessarily do so, because the judicial rules are immune from legislative correction. The rule here criticized by the dissent rests upon our interpretation of a statute. There may be cases in which the Court has overruled its own prior interpretation of a statute, but I cannot recall any. The reason why such decisions are rare is obvious. If the Court is wrong in its interpretation of a legislative enactment, the Legislature can readily correct the statute to make its meaning clear.
Finally, there is no hardship in applying the rule before us. It requires only that the court show the verdict sheet to defense counsel and obtain his or her consent to deliver it to the jury. The record fails to show that the trial court did so in this case and it is not for us, an appellate court, to go outside the record and speculate on whether counsel knew of this annotation on the verdict sheet and failed to preserve his claim or if he was unaware that the sheet had been annotated. Nor is it legitimate for us to change the rule so that the trial court’s failure to abide by it may be deemed correct.

 See, 1995 Report of the Advisory Committee on Criminal Law and Procedure to the Chief Administrative Judge of the Courts of the State of New York, at 70.