**UNITED STATES of America,**

v.

**Henry W. GRUNEWALD, Daniel A. Bolich and Max Halperin, Defendants.**

United States District Court
S. D. New York.
June 6, 1958.

See also 162 F.Supp. 626; 164 F. Supp. 644.

Paul W. Williams, U. S. Atty., New York City, for the Government, by Robert Kirtland and Robert B. Fiske, Jr., Asst. U. S. Attys., New York City.

John C. Walsh, New York City, for defendant Henry W. Grunewald.

Rudolph Stand and Frank Aranow, New York City, for defendant Daniel A. Bolich.

Murray E. Gottesman, New York City, for defendant Max Halperin, Jack J. Elkin, New York City, of counsel.

HERLANDS, District Judge.

An examination of Exhibit 133 for identification (Grunewald's Grand Jury testimony of Nov. 16, 1953) discloses that Grunewald was fully and clearly advised of his Fifth Amendment privilege and that he voluntarily proceeded to answer all questions.

The record also shows beyond dispute (page 5 of Exhibit 133 for identification) that until Grunewald had the opportunity to consult his counsel, he was given the unqualified and unconditional privilege to decline to answer *any* question *without* stating any reason for his refusal.

At pages 5–6 the following appears:

"Mr. Newcomb: What I suggest you do is this: We go ahead this morning, as I have said, but we will give you this morning, until you have had a chance to consult your counsel, the privilege of just declining to answer any particular question without stating your grounds.

"The Witness: Yes, sir.

"Mr. Newcomb: Until you have talked to your attorney.

"The Witness: Thank you, sir.

"Mr. Newcomb: I assume Mr. Collins is your attorney.

"The Witness: Yes, sir, he is."

An examination of the minutes indicates that, at no time, did Grunewald refuse to answer any questions, either on the ground of the Fifth Amendment privilege or on the ground that he desired to consult counsel.

Assuming *arguendo* that there was a right to counsel before he entered the grand jury, there was a waiver of that right.

Moreover, the Court is impressed by Mr. Newcomb's testimony (which the Court accepts completely as truthful) that after the formal session before the grand jury on November 16, 1953, Mr. Newcomb and his staff made arrangements for Grunewald to consult with his attorney, William H. Collins, Esq., of the Washington, D. C. bar. It appears that Grunewald then consulted with his attorney; and that on the next day, November 17, 1953, Grunewald continued to testify in the same manner as he had theretofore testified on November 16, 1953.

Thus, there was a ratification by conduct of Grunewald's waiver of the supposititious right to counsel, which ratification took place after Grunewald had the opportunity to consult with counsel.

It is a logical and reasonable inference that Grunewald informed his attorney of what had transpired on the morning of November 16, 1953. There is a significant absence of any statement, objection, protest, or complaint on the part of either Grunewald or his attorney.

In my opinion, the present argument—that Grunewald's right to counsel was invaded—is a mere afterthought, and is being urged in the hope that there may be some possible ground to argue hereafter that error was committed.

 Moreover, a consideration of the evidence would show that no trick or device was practiced on Grunewald. A witness may be brought before a grand jury by the process known as a *writ of habeas corpus ad testificandum.* Whether the Government used a forthwith subpoena instead of a *writ of habeas corpus ad testificandum* is a matter which, in terms of substantial rights and in the context of the facts of the case at this time, does not constitute a decisive point of law.

In any event, at this time and in view of the fact that no protest was made at any pertinent time by Grunewald's Washington attorney, who appeared in the picture on November 16, 1953, whatever ground of complaint there might have been has been waived.

The constitutional right to counsel is found in the Sixth Amendment. That amendment relevantly provides: "In all criminal prosecutions, the accused shall enjoy the right * * * to have the Assistance of Counsel for his defence."

Of controlling importance are the following features of the foregoing constitutional provision: it relates to "prosecutions" and to the "defence" of the "accused".

 It has been authoritatively held by the United States Supreme Court that a witness subpoenaed before a grand jury does not come within the coverage of the quoted constitutional provision. Gilmore v. U. S., 10 Cir., 1942, 129 F.2d 199, 203, citing Counselman v. Hitchcock, 142 U.S. 547, 563, 12 S.Ct. 195, 35 L.Ed. 1110.

 As was pointed out in the Counselman case, the words "criminal case" contained in the Fifth Amendment are broader than the words "criminal prosecutions" appearing in the Sixth Amendment.

The Court of Appeals for this Circuit in In re Black, 2 Cir., 1931, 47 F.2d 542, 543, said, in an opinion written by Judge A. N. Hand for a unanimous court:

"The appellant insists that, before a witness is compelled to testify before a grand jury, he should be apprised of the subject-matter of the inquiry or the name of the persons against whom the inquiry is addressed, and that he should not be called upon to go unaided by counsel to an inquiry which is unlimited in scope and for which he is entirely unprepared. But the privilege of a witness against self-incrimination is personal. Neither at a trial nor before a grand jury is he entitled to have the aid of counsel when testifying. It is hard to see then why he must be warned of the nature or extent of the testimony which is likely to be called for. A witness is not entitled to be furnished with facilities for evading issues or concealing true facts. Every bona fide investigation by the grand jury seeks to ferret out crime and criminals. To detect crime and present charges against the guilty requires the most ample power of investigation. Frequently neither the nature of the crime itself, nor the identity of criminals can be forecast. To be compelled to state either in advance we think is likely unnecessarily to impede investigation and obstruct the administration of justice."

The Black case was followed in United States v. Blanton, D.C.Missouri 1948, 77

F.Supp. 812, 816, where District Judge Hulen quoted the above passage from the Black case and said:

"He (defendant Fuchs) complains that he was not advised of his 'right to the advice of counsel' when he was called before the grand jury. We know of no authority calling for such a proceeding."

The Blanton case was followed in the recent case of United States v. Levine, D.C.Mass.1955, 127 F.Supp. 651 at page 653, where Judge Ford said:

"Defendant's right to the assistance of counsel accrues with the returning of the indictments against him. Gilmore v. United States, 10 Cir., 129 F.2d 199, ·203. He is not entitled to counsel at the grand jury stage of the proceedings, United States v. Blanton, D.C., 77 F.Supp. 812, 816, much less during the preliminary investigatory stages."

We now come to the defendants' argument that, at the time Grunewald was subpoenaed and appeared before the grand jury in the District of Columbia, he was "a putative defendant," (Argument of Mr. Walsh, Trial Minutes, page 2677) and a "prospective defendant." (Argument of Mr. Walsh, Trial Minutes, page 2681.)

The proceedings before the grand jury for the District of Columbia were entitled "In re Possible Violations of Sections 201, 202, 371 and 1621 of Title 18 and Sections 145 and 4047 of Title 20 (sic) of the United States Code [Annotated]." It is clear beyond cavil that this is what is ordinarily called a John Doe investigation.

■ There is no evidence before this Court to indicate that, at the time the grand jury started and conducted the investigation, Grunewald was marked out as a defendant or that he was what is sometimes called a *de facto* defendant. On the facts presented to the Court and the law applicable thereto, the Court finds this argument to be without substantial merit. See United States v.

Hoffa, D.C.S.D.N.Y.1957, 156 F.Supp. 495–510, 514.

Another argument advanced by defendants is that, under the doctrine of the McNabb case, McNabb v. U. S., 1943, 318 U.S. 332, 63 S.Ct. 608, 87 L.Ed. 819, the evidence obtained by the Government by virtue of the grand jury examination of Grunewald was inherently "unfair", and that the Government should be precluded from using evidence thus obtained.

The history of the McNabb case is largely a commentary on the judicial struggle to keep that decision within its factual and policy frame of reference. United States v. Mitchell, 1944, 322 U.S. 65, 64 S.Ct. 896, 88 L.Ed. 1140; Upshaw v. United States, 1948, 335 U.S. 410, 69 S.Ct. 170, 93 L.Ed. 100; United States v. Carignan, 1951, 342 U.S. 36, 72 S.Ct. 97, 96 L.Ed. 48; Mullican v. United States, 5 Cir., 1958, 252 F.2d 398.

The McNabb case has been followed in situations exemplified in the recent decision of Mallory v. United States, 1957, 354 U.S. 449, 77 S.Ct. 1356, 1 L.Ed.2d 1479, where, as in the McNabb case, there was an unreasonable delay in arraignment.

The McNabb doctrine cannot be inflated into a generalized principle of Criminal Equity. We have not yet developed a body of law known as Criminal Equity, the touchstone of which would be a vague concept of fairness. If we are to administer criminal justice on some undefined theory that the courts are the keepers of the community's conscience, that doctrine remains to be charted by the upper echelons of the judiciary.

What Judge Learned Hand (dissenting) said in Spector Motor Service, Inc., v. Walsh, 2 Cir., 1944, 139 F.2d 809, 823, vacated 1944, 323 U.S. 101, 65 S.Ct. 152, 89 L.Ed. 101 is applicable to the case at bar:

"Nor is it desirable for a lower court to embrace the exhilarating opportunity of anticipating a doctrine which may be in the womb of time, but whose birth is distant."

644

[Quoted by Irving Dillard in his Introduction to "The Spirit of Liberty, Papers And Addresses of Learned Hand," (2d. ed., 1953 p. xix.)]

Judge Medina (dissenting) spoke in similar vein in Liberty Mutual Ins. Co. v. Borsari Tank Corporation of America, 2 Cir., 1957, 248 F.2d 277, 290:

"But I have no confidence in this vague and slippery approach. Indeed, I do not believe that under our system of jurisprudence, judges have the right to decide cases purely on the basis of what may strike an individual judge as the right thing to do, independent of any rule of law. We are not mere philosophers, nor is it our function to dispense a priori justice between the parties, but rather to determine and apply the law as best we can. * * * the fact still remains that as yet there is no such law, the possibility of such a decision lies in gremio legis; it is a possibility but nothing more than that."

█ █ The theory of admissibility is that Grunewald's grand jury testimony (Exhibits 133 and 134 for identification) constitutes an admission binding upon and admissible only as against Grunewald. Since the Government concedes that November 16, 1953 (the date of the particular grand jury testimony) was beyond the terminal date of the alleged conspiracy, that admission would not be binding on the co-defendants Bolich and Halperin, under the doctrine expounded in Krulewitch v. U. S., 336 U.S. 440, 69 S.Ct. 716, 93 L.Ed. 790 and Lutwak v. U. S., 344 U.S. 604, 73 S.Ct. 481, 97 L.Ed. 593.

Accordingly, Exhibit 134 for identification will be admitted into evidence at the appropriate time upon retender of that proof by the Government. The jury will be instructed by the Court in appropriate language as to the limitations of the admissibility of such evidence.

Upon the facts and upon the law, the defendants' objections and motion to suppress are overruled and denied.