**UNITED STATES of America**

v.

**Angel SANTIAGO, et al., Defendants.**

**No. S5 97 CR 786(SAS).**

United States District Court,
S.D. New York.

Feb. 13, 1998.

M. Katherine Baird, Asst. U.S. Atty., Robin L. Baker, Asst. U.S. Atty., New York City, for Government.

Jerry Vasquez, New York City, for Gregory Ayala.

· Avraham C. Moskowitz, Moskovitz & Book, New York City, for Gregory Ferguson.

Labe M. Richman, New York City, for Miguel Guzman.

James Roth, Hurwitz, Stamper & Roth, New York City, for Carlos Hernandez.

David S. Greenfield, New York City, for Alonzo Jarrell.

Daniel Nobel, New York City, for Kenneth Johnson.

Michael R. Young, New York City, for William Licea.

Ernest H. Hammer, New York City, for Rolando Lorenzo.

Harriet B. Rosen, New York City, for Daniel Ortiz.

Mitchell Golub, New York City, for Tommy Perez.

John H. Jacobs, Marion Seltzer, New York City, for Edwin Rivera.

Martin Jay Seigel, New York City, for Angel Santiago.

Thomas F.X. Dunn, New York City, for Samuel James Smith.

Richard Brewster, New York City, for Pablo Vilella.

## OPINION AND ORDER

SCHEINDLIN, District Judge.

Defendant Angel Santiago ("Santiago" or "defendant") is charged in a multi-defendant, multi-count RICO and drug conspiracy indictment. He is charged, in substance, with belonging to a gang known as "Power Rules" that engaged in large-scale narcotics trafficking accompanied by the extortion and violence necessary to ensure the continuing viability of the enterprise. The eleven defendants remaining in the case have made a substantial number of motions, only one of which—Santiago's motion to suppress a statement he made on June 9, 1997—is addressed by this Opinion. This statement was made while Santiago was being questioned by agents of the New York Drug Enforcement Task Force ("Joint Task Force"), an entity that includes agents of the Drug Enforcement Administration ("DEA") and officers of the New York City Police Department ("NYPD"). A suppression hearing was held on December 8 and December 30, 1997. For the reasons discussed below, the statement must be suppressed.

## I. FACTUAL BACKGROUND AND FINDINGS

### A. Background

Santiago was arrested on or about August 28, 1996, on charges that he sold two vials of crack to an undercover police officer. *See* Transcript of December 30, 1997 ("TR") at 264. He was arrested again on or about November 4, 1996, this time for selling five vials of crack to a police officer. TR at 265. He was held in state custody on Rikers Island, pending disposition of these charges, neither of which is yet resolved. TR at 253. The current federal indictment charges Santiago with participating in a conspiracy to distribute crack cocaine for a period of time including all of 1996.[1]

The federal indictment was returned on August 7, 1997 and unsealed on August 12, 1997. While these charges were under investigation, agents of the Joint Task Force interviewed Santiago pursuant to a writ of *habeas corpus ad testificandum. See* Defendant's Exhibit ("DX") A. When asked how that interview happened to occur, Agent Peter Borysevicz stated:

Well, through my investigation into the Power Rule gang, I knew that Angel Santiago was a member. So at that point I took

---

1. Santiago is also charged with possession and distribution of crack and racketeering. The pattern of racketeering alleged includes four murders, twelve murder conspiracies, fourteen attempted murders, extortion, armed robbery and narcotics trafficking.

a shot at interviewing him.... I, just, on a hunch, pulled him out of Rikers Island. He's a member of the gang, he was looking at two state cases at the time, so I figured he would be a candidate for an interview. Transcript of December 8, 1997 ("TR") at 138.

In order to obtain the writ of *habeas corpus ad testificandum,* a supporting Affirmation was submitted by an Assistant United States Attorney ("AUSA"). *See* DX B. The Affirmation was captioned "In the Matter of a Proceeding Before the Grand Jury". *Id.* In her affirmation, the AUSA stated that "she has charge of an investigation being conducted by the United States Attorney for the Southern District of New York in the above-entitled matter." She further states that Angel Santiago "is believed by the Drug Enforcement Administration and the New York City Police Department to have certain information which will be material and necessary to present to the Grand Jury." *Id.* The Affirmation ends with a request:

> [T]hat a writ ... be issued directing the New York City Department of Correction to produce to Special Agents of the Drug Enforcement Administration, New York City Police Detectives, or any duly authorized federal law enforcement officers on June 9, 1997, at or before 10:00 a.m., so that said prisoner may meet with representatives of the United States Attorney's Office for the Southern District of New York in preparation for his Grand Jury appearance in the matter of *United States v. John Doe.*

*Id.* The writ itself repeats this language, commanding the Warden of Riker's Island to transfer custody of Angel Santiago to the DEA, NYPD or any duly authorized federal law enforcement officers "so that said prison-er may meet with representatives of the United States Attorney's Office for the Southern District of New York in preparation for his Grand Jury appearance in the matter of *United States v. John Doe.*" DX A.

The Grand Jury described in this writ was undoubtedly the Grand Jury considering the charges ultimately brought against Santiago and fifteen other defendants. As mentioned briefly above, those charges include RICO, extortion and conspiracy charges, as well as substantive charges of narcotics distribution, murder, armed robbery and firearms violations. Santiago faces a life sentence.

After questioning the AUSA who drafted the affirmation in support of the writ, a United States District Judge issued it. *See* Affirmation of AUSA Margery Feinzig ("Feinzig Aff.") dated January 20, 1998.[2] DEA Agent Borysevicz and NYPD Detective Joseph Miraglia went to Rikers Island and took Santiago to the DEA's office in Manhattan. TR at 139. Santiago never met with any AUSA in preparation for any grand jury testimony, nor did he testify in any proceedings. TR at 154. The Government concedes that at the time of the June 9 interview, the agents neither notified Santiago's counsel in his pending state cases nor provided a different counsel to represent him on the potential federal charges. TR at 140. Agent Borysevicz testified that he did advise Santiago of his *Miranda* rights. TR at 139. Santiago, in turn, testified that he repeatedly asked for counsel. TR at 259, 266, 277–78, TR at 145.[3] The Government denies this. The agents proceeded to question Santiago with respect to matters concerning the Power Rules gang—specifically, its membership and its unlawful activities. TR at 142. It appears that Santiago was not questioned about ei-

---

2. According to AUSA Feinzig, the District Judge expressed "concern[ ] about the circumstances under which the law enforcement officers would be speaking with the subject of the writ and ... asked if that person would have the opportunity to speak with an attorney or if the Government intended to call him before the grand jury without his consulting with counsel." AUSA Feinzig recalls that she then explained to the Judge "that the officers were going to follow the following routine procedure: they would transport the individual from state custody to federal custody; they would advise the individual of his rights; they would inform him that he did not have to speak with them; and they would inform him that a lawyer would be appointed to represent him if he wished to speak with a lawyer before he spoke with the officers."

3. Agent Borysevicz testified that Santiago asked for a lawyer, for the first time, when questioned concerning the murder of Alvin Rivera. At that point, according to the agent, the interview was terminated. TR at 145.

ther of the pending state charges. TR at 143. According to the Government, Santiago made a number of incriminating statements. *See* GX 6 (DEA Report of Statement); TR at 142. Santiago generally denies this, although he admits that at times he answered "yes" to statements made by the officers concerning the activities of various members of Power Rules. TR at 277, 284, 287–88, 294. It is those statements that the Government seeks to offer against Santiago and that Santiago seeks to suppress.

## B. Findings

Santiago never met with any representative of the United States Attorney's Office, never prepared for any grand jury testimony and never testified in a grand jury. The application for the writ was therefore misleading. I credit the agent's testimony at the suppression hearing that Santiago was read his rights and made the statements contained in the agent's report. However, I also credit Santiago's testimony that he repeatedly asked for counsel. Finally, it is undisputed, and I find, that no counsel was provided on June 9, 1997 when the statement was made.

## II. Discussion

### A. Right to Counsel

There are two rights to counsel found in our Constitution. The Sixth Amendment provides a right to counsel "at or after the initiation of adversary judicial criminal proceedings—whether by way of formal charge, preliminary hearing, indictment, information, or arraignment." *Kirby v. Illinois,* 406 U.S. 682, 688–689, 92 S.Ct. 1877, 32 L.Ed.2d 411 (1972). This right has been held to be offense specific—that is, while a defendant cannot be interrogated in the absence of counsel with respect to a charged offense, no counsel is necessary when he is questioned about conduct unrelated to that charge. *See generally, McNeil v. Wisconsin,* 501 U.S. 171, 111 S.Ct. 2204, 115 L.Ed.2d 158 (1991); *Moran v. Burbine,* 475 U.S. 412, 106 S.Ct. 1135, 89 L.Ed.2d 410 (1986). Once the right to counsel attaches with respect to a charged offense, it carries over to a "closely related" but uncharged crime as well. *See Maine v. Moulton,* 474 U.S. 159, 106 S.Ct. 477, 88 L.Ed.2d 481 (1985); *Brewer v. Williams,* 430 U.S. 387, 97 S.Ct. 1232, 51 L.Ed.2d 424 (1977).[4]

The Fifth Amendment privilege against self-incrimination also provides a right to counsel. Once a suspect is in "custody" he or she must be informed of the right to an attorney. Once that right is exercised, no further questioning may occur in the absence of counsel. *See generally, Edwards v. Arizona,* 451 U.S. 477, 484, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981); *Minnick v. Mississippi,* 498 U.S. 146, 150, 111 S.Ct. 486, 112 L.Ed.2d 489 (1990). Unlike the Sixth Amendment right, the right to counsel is not offense specific: Once it is invoked, a suspect can no longer be questioned about any matter in the absence of counsel. *See Arizona v. Roberson,* 486 U.S. 675, 108 S.Ct. 2093, 100 L.Ed.2d 704 (1988).

### 1. Sixth Amendment Right Under New York Law

Because this is a joint federal-state investigation, the issue raised by this motion, namely the questioning of a defendant in custody in the absence of counsel, should be addressed under both state and federal law. In New York, it is well settled that a defendant in custody cannot be questioned in the absence of counsel, even if the questioning relates to a matter other than that for which the defendant is charged.[5] This rule was

---

4. The "closely related" rule has not been explicitly recognized in this Circuit, although it has been in many other Circuits as well as in a number of state courts. *See United States v. Arnold,* 106 F.3d 37 (3rd Cir.1997); *United States v. Kidd,* 12 F.3d 30 (4th Cir.1993); *United States v. Hines,* 963 F.2d 255 (9th Cir.1992); *United States v. Cooper,* 949 F.2d 737 (5th Cir.1991); *United States v. Mitcheltree,* 940 F.2d 1329 (10th Cir. 1991); *Whittlesey v. State,* 340 Md. 30, 665 A.2d 223 (1995) *State v. Tucker,* 137 N.J. 259, 645 A.2d 111 (1994); *Commonwealth v. Santiago,* 528 Pa. 516, 599 A.2d 200 (1991); *People v. Clankie,* 124 Ill.2d 456, 125 Ill.Dec. 290, 530 N.E.2d 448 (1988).

5. The New York rule is not so clear when a defendant is charged with an offense, has counsel, but is *not* in custody on that charge when questioned on a second offense. At one time the

very recently reaffirmed by a 6–1 majority of the New York Court of Appeals. *See People v. Burdo*, 91 N.Y.2d 146, 667 N.Y.S.2d 970, 690 N.E.2d 854 (N.Y.1997) (citing *People v. Rogers*, 48 N.Y.2d 167, 169, 422 N.Y.S.2d 18, 397 N.E.2d 709 (1979)). In another recent decision, a unanimous Court of Appeals restated the rule succinctly:

> Importantly, *Rogers* establishes and still stands for the important protection and principle that once a defendant in custody on a particular matter is represented by or requests counsel, custodial interrogation about any subject, *whether related or unrelated to the charge upon which representation is sought or obtained,* must cease.

*People v. Steward*, 88 N.Y.2d 496, 500–01, 646 N.Y.S.2d 974, 670 N.E.2d 214 (1996) (emphasis added). In *Burdo*, the defendant was questioned on a matter wholly unrelated to that for which he was in custody. He was read his *Miranda* rights and agreed to answer questions. He did not request counsel. Nonetheless, the Court held that the questioning was improper and the statements had to be suppressed because the defendant was in custody and there was no counseled waiver. *Burdo*, 91 N.Y.2d 146, 149–50, 667 N.Y.S.2d 970, 690 N.E.2d 854.

Under Article I, Section 6 of the New York State Constitution, then, the questioning of Santiago in the absence of counsel violated defendant's right to counsel. An NYPD Detective participated in the questioning, knowing full well that Santiago was in custody on two state charges for which he had counsel. The Detective knew or should have known that the questioning was not permitted under New York law. Circumventing state law via participation in a joint federal-state investigation should not be encouraged.

*Rogers* rule was extended to cover this situation. *See People v. Bartolomeo*, 53 N.Y.2d 225, 440 N.Y.S.2d 894, 423 N.E.2d 371 (1981). This holding was eventually overruled in *People v. Bing*, 76 N.Y.2d 331, 349, 559 N.Y.S.2d 474, 558 N.E.2d 1011 (1990). After *Bing*, the test is whether the second charge is so "closely related" to the first charge that questioning in the absence of counsel is inappropriate. Interestingly, the New York Court of Appeals is about to hear a case, *People v. Jonathan Grant*, which raises the question of

## 2. Federal Sixth Amendment Analysis

On the federal side, the issue is whether the "closely related" rule applies. If the pending charge is "inextricably intertwined" with the charge under investigation, the right to counsel on the pending charge cannot be separated from the right to counsel on the uncharged offense. *See Arnold*, 106 F.3d at 41 (citing *Hines*, 963 F.2d at 257–58; *Cooper*, 949 F.2d at 743–44). Here, the charged offenses, for which Santiago had counsel, were two sales of crack cocaine. The uncharged offense involved a conspiracy to distribute crack cocaine. It encompassed the time period during which the two charged sales occurred.

In determining whether the pending and impending charges are "closely related" or "inextricably intertwined," courts have established a number of criteria, including similarities of time, place, person and conduct. *See Arnold*, 106 F.3d at 41; *Kidd*, 12 F.3d at 33; *Hines*, 963 F.2d at 257–58. Here, the conduct was identical—namely, the distribution of crack cocaine. *See Arnold*, 106 F.3d at 42 (analysis of whether conduct forming basis of charged and uncharged offenses is "closely related" turns on whether the acts in question were of the same type, not whether they were the very same acts). As already noted, the time was identical as well, in that the charged crack sales occurred during the course of the crack distribution conspiracy. Finally, the place was nearly identical—the individual sales were made in the Bronx, as were the sales attributed to the Power Rules conspiracy.[6] The only factor that may not be identical is the identity of the participants: Santiago may have acted alone in selling the small quantity of crack to the undercover officers in the charged sales, the federal charges involve a large-scale well-organized group effort to distribute crack. Even here,

when two criminal cases are related for the purpose of right to counsel analysis. *See* Gary Spencer, Court of Appeals to Weigh Right to Counsel Question, N.Y.L.J., February 9, 1998, at 1.

6. The uncharged sales and one of the charged sales are both alleged to have occurred on Union Avenue in the Bronx.

however, the charges are likely related: With respect to the small, isolated sales, it is not unreasonable to assume that Santiago's source for the crack was a member of the Power Rules group. These similarities are more than sufficient to support a conclusion that the charged and uncharged offenses were "closely related." *See Arnold,* 106 F.3d at 41–42 (finding charged witness tampering count and uncharged attempted murder count were closely related when they arose from the same factual circumstances); *cf. Hines,* 963 F.2d 255, 257–58 (charges were not closely related when the place, time and persons involved were different); *Cooper,* 949 F.2d at 743 (aggravated robbery charge and firearms charge not closely related due to different conduct involved). Santiago's questioning in the absence of counsel therefore violated his Sixth Amendment rights.

**3. Fifth Amendment Right**

■ The analysis of the Fifth Amendment right is the same under either New York or federal law. If Santiago was being questioned while in custody and asked for counsel, then any statement obtained after the assertion of the right to counsel must be suppressed. *See Edwards v. Arizona,* 451 U.S. 477, 484, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981). Because I credit Santiago's testimony that he asked for counsel during the questioning at the DEA office, and none was provided, the statement he made must be suppressed.

**B. Misuse of the Writ**

■ As described earlier, Santiago was in state custody when a federal writ of *habeas corpus ad testificandum* was obtained. Under 28 U.S.C. § 2241(c)(5), the "writ of habeas corpus shall not extend to a prisoner unless—[i]t is necessary to bring him into court to testify or for trial." It is well settled that an appearance before a grand jury is an appearance in court for the purpose of testifying. *See United States v. Lach,* 874 F.2d 1543 (11th Cir.1989) (citing *Carmona v. Warden of Ossining Correctional Facility,* 549 F.Supp. 621, 622 (S.D.N.Y.1982); *United States v. Grunewald,* 164 F.Supp. 640, 642 (S.D.N.Y.1958)). Here, however, Santiago

not only did not appear before a grand jury, there was no attorney present to determine whether his testimony was even appropriate for a grand jury. It is hard to see how a mere investigative interview with law enforcement officers could be shoehorned into the restrictive language of § 2241.

Nor does the case law provide support for the government's position. It has not cited, nor has my research revealed, any case in which use of the writ for an interview with law enforcement officers was upheld. In fact, no appellate court has approved the use of the writ for even the more limited purpose of facilitating an interview with United States Attorneys. The sole support for this proposition comes from a solitary, sixteen year old district court decision. *See Carmona,* 549 F.Supp. at 621. The facts of that case were as follows: A state prisoner was transferred, against his will, to federal custody pursuant to a writ of *habeas corpus ad testificandum* because an AUSA believed that he had valuable information regarding narcotics trafficking and hoped that he would be a witness at an upcoming trial. The prisoner, however, refused to testify at the trial and testified for the defense at the retrial. At all times the prisoner refused to be interviewed by Government attorneys. *See id.* (citing Affidavit of AUSA Solberg). In response to these rebuffs, the Government sought to obtain an order of immunity and to compel him to testify before a grand jury. While it is impossible to know exactly what the writ (and the supporting affidavit) said, the following description is contained in the decision:

> The writ ... commands petitioner's presence "to appear and be interviewed with respect to violations" of federal narcotics laws. He is to be returned to state custody only after he has "been so interviewed and excused by the United States Attorney for the Southern District of New York." Because petitioner has refused to be interviewed by Government attorneys, the United States Attorney's Office for the Southern District has not yet excused petitioner in order to allow his return to state custody.

*Id.* at 622. Finding that the Government did indeed intend to use the prisoner's testimony

in the grand jury proceedings, the court upheld the use of the writ. *See id.* at 622. As already indicated, however, the absence of any AUSAs at Santiago's interview makes this case clearly distinguishable from *Carmona*.[7] The government represents that use of the writ to facilitate investigative interviews with law enforcement officers is common in the United States Attorney's Office. *See* Gov't Mem. at 7.[8] Be that as it may, this practice is engaged in with precious little authorization from either the statutory language or the courts.

The Government seeks to extend the rationale of *Carmona* by arguing that it is proper to use the writ to "prepare" a witness for a possible, rather than an inevitable or even likely grand jury appearance. A full reproduction of the Government's view is warranted:

> It is generally not possible for the Government, before meeting with a potential grand jury witness, to know whether or not the witness should testify before the grand jury and would be willing to do so. Such a meeting might result in the potential witness not appearing before the grand jury. For example, it might turn out that the potential witness does not have relevant or sufficiently important information, or that the witness would assert a Fifth Amendment privilege and would not testify without an immunity order.... The Government's meeting with a potential grand jury witness in preparation for the witness's possible appearance before the grand jury is an appropriate filtering mechanism that helps to ensure that the grand jury is used effectively and efficiently.

*See* Government's Memorandum of Law in Opposition to Defendant Angel Santiago's Motion to Suppress his June 9, 1997 Statement ("Gov't.Mem.") at 6–7.

This argument is not without merit. However, because the writ is being stretched to include a meeting with the Government in "preparation" for grand jury testimony, careful safeguards must be in place to ensure that the Court is not misled and the writ is not misused. Here, the Court was told that the state prisoner would "meet with representatives of the United States Attorney's Office for the Southern District of New York in preparation for his Grand Jury appearance...." DX B. The Court immediately expressed concern about safeguarding his right to counsel. Upon being reassured that counsel would be provided, the writ was issued.

What went wrong here is obvious. Law enforcement agents of the Joint Task Force should not be considered "representatives of the United States Attorney's Office." These agents are not empowered to do the tasks laid out by the Government in its Memorandum of Law, such as determining when a grant of immunity should be sought. In addition, they may turn out to be far less sensitive to a defendant's right to counsel, not to mention the need for the target or subject warnings that an AUSA is trained to give. Agents were allowed to question a prisoner who was the target of the federal investigation, in the absence of either a representative of the United States Attorney's Office or his own counsel. The agents used the writ to obtain an uncounseled confession, which the Government now seeks to introduce in evidence. What occurred here is exactly what the district judge feared when she asked the AUSA if "the person would have the opportunity to speak with an attorney or if the Government intended to call him before the grand jury without his consulting with counsel." Feinzig Aff. at 2. This

---

7. Though of course I need not decide the issue of whether the writ would have been appropriate had AUSAs been present at Santiago's interview, I note that *Carmona* is the only authority for that tenuous proposition.

8. According to the government,

> [t]he Santiago writ is the standard type of writ used by the United States Attorney's Office for the Southern District of New York during the pendency of grand jury investigations. In numerous past and other currently pending cases, such writs have been used to meet with individuals who were being held in state or local custody.

Gov't Mem. at 7. I note that conspicuously absent from this description is a representation regarding who it is that meets with the individuals subject to this type of writ. As I have discussed, the permissibility of the writ may depend on whether such individuals are interviewed by AUSAs or by other law enforcement personnel.

behavior is inappropriate and should not be permitted. Thus, under the circumstances of this case, the writ was misused.

The Government next argues that even if this writ was misleading, this is not a ground for suppression of Santiago's statement. *See* a Gov't Mem. at 10 (citing, *inter alia, United States v. Larkin,* 978 F.2d 964 (7th Cir. 1992)). The Government's reliance on *Larkin* is misplaced. In that case, the Government obtained the grand jury appearance of two bank robbery suspects by way of a writ of *habeas corpus ad prosequendum* instead of a writ of *habeas corpus ad testificandum.* The purpose of the writ was to cause the suspects to appear before the grand jury for a line-up. While the Court criticized the Government for sloppily using the wrong writ, it held that the error in form did not render the defendants' production invalid because the writ was issued for a proper purpose.

That is not the case here. Santiago was produced for an improper purpose, namely to permit unsupervised agents to question him in the absence of counsel. As the Government itself argues, even if the wrong writ was obtained, and the Government should have requested Santiago's production under the All Writs Act, 28 U.S.C. § 1651, the Government "must not violate [an] individual's Fifth and Sixth Amendment rights in meeting with [him]." Gov't Mem. at 10.[9] Here, the wrong writ was used. A writ of *habeas corpus ad testificandum* should be used for actual testimony, or in its most lenient interpretation, to permit a meeting with the prosecutor to prepare for such testimony. But even if a different writ could have been used, a question I need not answer, the Government concededly must not violate a defendant's constitutional rights. Because I have earlier found that Santiago's constitutional rights were violated, the misuse of the writ in this case must result in suppression.

## III. CONCLUSION

For the reasons discussed above, the questioning of Santiago on June 7, 1997 was

unlawful and any statement he made at that time must be suppressed.

SO ORDERED.

---

**9.** I note that it is very questionable whether the writ would have been proper even if it had been issued under the All Writs Act. *See Ivey v. Harney,* 47 F.3d 181, 185 (7th Cir.1995) (a district court cannot avoid the limitations of § 2241(c)(5) by recourse to the All Writs Act).