OPINION OF THE COURT
Simons, J.
Defendant, Brenda Davis, was indicted for two counts of aggravated sexual assault and two counts of murder, second degree, for events occurring between August 23 and August 25, 1985 when she and codefendant James Davis inflicted injuries on Elizabeth Schlitt which eventually caused her death. Defendant pleaded guilty to felony murder in full *519 satisfaction of the charges, but before doing so she moved to suppress inculpatory statements made to Sheriff’s Deputies (1) at her farm during the evening of August 25, 1985, after she had requested counsel, and (2) while in custody at the Sheriff’s office the next day, after she had been advised of her Miranda rights and waived them.
County Court suppressed the statements made after the request for counsel on August 25 but denied the motion to suppress those made the next day. It held that although defendant had invoked her right to counsel on August 25 she could, and on the facts presented did, effectively waive it on August 26. The court inferred that defendant had withdrawn her August 25 request for counsel because she failed to secure counsel during the intervening 15 hours, when she was free of police influence and had a reasonable opportunity to do so.
The Appellate Division reversed and suppressed the statements made August 26 holding that defendant had invoked her right to counsel the night before and that she could not effectively waive it thereafter in the absence of an attorney. A Judge of this court granted the People leave to appeal.
The People concede that the statements on August 25 must be suppressed. They contend, however, that a suspect, who has requested counsel when not in custody, may subsequently waive that right before an attorney enters the case if proceedings have not begun. We agree and therefore reverse the order of the Appellate Division and remit the matter to it for a consideration of the facts.
In August 1985, defendant lived on a farm outside of Water-town with her two-year-old daughter, codefendant James Davis, her husband’s cousin, and Jessie White, an 85-year-old woman who was infirm and senile. On August 25, Jefferson County Sheriff’s Deputies were called to the farm to investigate the death of Elizabeth Schlitt, the girlfriend of James Davis. They found the victim’s body in the barn face-down and fully clothed, except for her shoes. Defendant and codefendant Davis explained that Elizabeth had gone to the barn to stack wood and had been killed when she fell from the top of the woodpile. The deputies later learned from an autopsy, however, that death resulted from multiple injuries, including penetration of the vagina by a foreign object causing it to rupture. That afternoon they questioned James Davis again at the Sheriff’s office and he admitted that he and defendant had assaulted Elizabeth to punish her. The abuse occurred over a *520 two-day period while the victim’s arms and legs were tied in a spread eagle manner to a stanchion in the cow barn, was both physical and sexual, and included inserting a broom handle into the victim’s vagina.
About 9:00 p.m. that evening, deputies returned to the farm and questioned defendant. Although she was not in custody at the time, they advised her of her Miranda rights before questioning her. She acknowledged that she understood them and agreed to answer their questions. When the deputies confronted defendant with Davis’ confession, however, she became hysterical and told them that "[she] want[ed] a lawyer here to talk to you guys.” The deputies calmed her and then continued the questioning until they had obtained several inculpatory answers. Before leaving the farmhouse that evening, they told defendant that they would contact her the following day and she answered: "I hope you guys both come back * * * to talk to me tomorrow.” On this evidence, County Court ruled that defendant had invoked her right to counsel during the August 25 interview and it suppressed all statements she made after doing so.
As promised, the deputies returned to the farm the following afternoon. They found a note written to them by defendant explaining that she had left to do her laundry and telling where they could find her. They met her at her sister’s house and asked her to come to the Sheriff's office for further questioning. Although she accompanied them voluntarily, the People concede she was in custody from then on. The deputies advised defendant of her constitutional rights several times before and during the interrogation which followed. She waived them orally and in writing before giving audiotaped, videotaped and written confessions detailing her complicity in the attacks. County Court denied defendant’s motion to suppress this evidence finding that she understood the rights read to her that afternoon and knowingly, intelligently and voluntarily waived them before talking to the officers. The question presented is whether defendant was legally capable of waiving her rights under the circumstances.
The right to counsel in criminal proceedings is guaranteed by the Federal and State Constitutions (US Const 6th, 14th Amends; NY Const, art I, §6). It is personal and may, as a general principle, be waived by the client without notice to or consultation with counsel (see, 1 LaFave & Israel, Criminal Procedure § 6.4, at 471; Brewer v Williams, 430 US 387, 405- *521 406; id., at 413 [Powell, J. concurring]). In New York, the right to counsel is grounded on this State’s constitutional and statutory guarantees of the privilege against self-incrimination, the right to the assistance of counsel and due process of law (see, People v Skinner, 52 NY2d 24, 28; People v Hobson, 39 NY2d 479, 483). It extends well beyond the right to counsel afforded by the Sixth Amendment of the United States Constitution and other State Constitutions (see, People v Velasquez, 68 NY2d 533, 536; compare, Escobedo v Illinois, 378 US 478; Massiah v United States, 377 US 201; see also, 1 LaFave & Israel, Criminal Procedure § 6.4, at 468-469 [collecting cases]).
There are two well-defined situations in which the right is said to attach indelibly and a waiver, notwithstanding the client’s right to waive generally, will not be recognized unless expressed in the presence of counsel. The first deals with waivers after formal proceedings have commenced. A suspect, once indicted, arraigned or charged in a felony complaint may not waive the right to counsel or to remain silent in the absence of counsel and this is so even though the defendant has neither retained nor requested an attorney (People v Samuels, 49 NY2d 218; and see, People v Cunningham, 49 NY2d 203, 208; People v Settles, 46 NY2d 154). The second line of cases relates to uncharged individuals in custody who have retained or requested an attorney. Police authorities may not question them in the absence of counsel (People v Hobson, 39 NY2d 479, supra; People v Arthur, 22 NY2d 325). Moreover, in order to be entitled to the rule neither a represented defendant nor counsel is required to advise the police of that fact (see, People v Ellis, 58 NY2d 748; People v Arthur, supra, at 329). If the police know of the representation, or are chargeable with knowledge of it, they may not question in the absence of counsel (see, People v Bertolo, 65 NY2d 111; People v Pinzon, 44 NY2d 458).
These rules are necessary, we have said, not only as a matter of decency, to protect those in custody from the coercive power of the State and to enforce the ethical rules protecting represented clients, but also to insure that if those held by the police waive their rights they do so competently, intelligently and voluntarily (see, People v Settles, supra; People v Hobson, supra; see also, People v Bell, 73 NY2d 153, 160, 162).
As originally formulated the second, or Hobson, line of cases applied only to custodial interrogation of a represented sus *522 pect but in People v Cunningham (49 NY2d 203, supra), we applied the rule to protect an unrepresented defendant, in custody, who had requested the assistance of counsel during interrogation. We reasoned that under the circumstance of custody the existence of counsel is little more than a fortuity and that an unrepresented defendant requesting legal assistance is subject to the coercive power of the State, and expresses the inability to deal with it when requesting counsel, no less than one who has already secured counsel. Finally, the rule has been extended to protect represented individuals from noncustodial questioning because questioning a defendant under such circumstances can interfere with the lawyer-client relationship no less than custodial questioning (see, People v Ellis, supra; People v Skinner, 52 NY2d, supra, at 29-30; cf., People v Hauswirth, 89 AD2d 357, affd 60 NY2d 904; and People v Mann, 60 NY2d 792).
The Appellate Division relied on the Cunningham decision in reversing defendant’s conviction. It held that defendant could not effectively waive her right to counsel when held in custody because she had invoked it the night before. We have never held, however, that an individual who has requested counsel in a noncustodial setting could not subsequently waive or withdraw that request and the reasons underlying the New York rule do not warrant doing so now.
The rule is intended to provide "a buffer, in the form of an attorney, between [citizens] and the coercive power of the State” at the times when "legal advice is most critically needed” (People v Settles, 46 NY2d 154, 164, supra). In a noncustodial interview, however, a witness or suspect is not constrained by police influence and does not suffer "the disadvantage” of being "directly confronted with the awesome law enforcement machinery possessed by the State” (see, People v Cunningham, supra, at 207). Coercive power is absent and police influence limited because the witness can simply refuse to respond to questions or walk away. Moreover, in noncustodial questioning the need for an attorney is substantially diminished. The police are not required to advise individuals of their rights and, therefore, there is no corresponding need for counsel to interpret the police recitation or insure that it is accurate and understood by the client before waiver. At that early stage of the investigation the value of legal assistance relates principally to protecting the witness from self-incrimination. As important as that may be, there is no legal requirement that an attorney be present before the witness *523 changes an earlier decision to remain silent and talks to the authorities. The right may be invoked or waived at will before proceedings have commenced (People v Gary, 31 NY2d 68; see also, People v Buxton, 44 NY2d 33, 37). Finally, there is no ethical prohibition against questioning an unrepresented defendant because such questioning does not interfere with an established lawyer-client relationship or undermine a planned defense.
Having decided that the defendant could forego her right to counsel without the presence of counsel on August 26, the question remains whether she indeed did so. The People were charged with the burden of proving a knowing, intelligent and voluntary waiver (see, Edwards v Arizona, 451 US 477, 486, n 9; see also, Oregon v Bradshaw, 462 US 1039, 1045). In deciding whether they met that burden, the courts must indulge every reasonable presumption against waiver (Brewer v Williams, 430 US 387, 404, supra). Moreover, to satisfy the burden in cases such as this, it is always desirable — and may be necessary — for the authorities to remind defendant of the earlier request for counsel and obtain an express withdrawal and a present waiver of the request for legal assistance. Nevertheless, there will be cases in which the conduct of the defendant is so unambiguous that a hearing court would be warranted in inferring from the circumstances that the earlier request for counsel has been withdrawn (cf., North Carolina v Butler, 441 US 369). Some factors which could support such an inference include whether defendant was fully advised of his or her constitutional rights before invoking the right to counsel and subsequently waiving it, whether the defendant who has requested assistance earlier has initiated the further communication or conversation with the police (see, Edwards v Arizona, supra, at 484-485; see also, Oregon v Bradshaw, supra, at 1043), and whether there has been a break in the interrogation after the defendant has asserted the need for counsel with a reasonable opportunity during the break for the suspect to contact an attorney (see, Dunkins v Thigpen, 854 F2d 394, and cases cited, at 397, and compare, People v Buxton, 44 NY2d 33, supra). Undoubtedly, there are others which may help to establish that rights invoked have subsequently been relinquished.
In this case, County Court found that defendant’s waiver on the afternoon of August 26 was valid because she had, in effect, changed her mind and withdrawn her earlier request for counsel. It found the inference supported by the lapse of *524 time between the request on August 25 and the waiver on August 26 and the fact that during that time defendant made no effort to secure legal assistance although she was free to do so. The court also noted defendant’s willingness to talk further to the deputies, manifested by remarks to the deputies the night of August 25, her note to them on the morning of August 26 and by her actions in voluntarily accompanying them to the Sheriff’s office that day. In view of this evidence, the court held that defendant’s request for counsel had lost its legal significance and that the subsequent waiver was valid. The Appellate Division, because it did not believe defendant was capable of waiving her right to counsel on August 26, did not consider whether she intended to do so and we, therefore, remit the matter to them for consideration of unreviewed factual questions (see, CPL 470.25 [2] [d]; CPL 470.40 [2] [b]).
Accordingly, the order should be reversed and the case remitted to the Appellate Division, Fourth Department, for further proceedings in accordance with this opinion.
Chief Judge Wachtler and Judges Kaye, Alexander, Ti-tone, Hancock, Jr., and Bellacosa concur.
Order reversed, etc.