■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v DIANNE ODELL,* Appellant. [808 NYS2d 830]—

Crew III, J. Appeal from a judgment of the County Court of Sullivan County (LaBuda, J.), rendered January 27, 2004, upon a verdict convicting defendant of three counts of the crime of murder in the second degree.

On May 14, 2003, Arizona authorities discovered the severely decomposed bodies of three newborn children contained in a storage unit rented by defendant. The Arizona authorities determined that defendant was a resident of Pennsylvania and, on May 17, 2003, interviewed defendant at the Pennsylvania State Police barracks in Towanda. Following several more interviews over the next three days, the last of which took place in the Village of Liberty, Sullivan County, defendant was indicted

---

* Although defendant's name is sometimes spelled "O'Dell," the proper spelling and that which appears on the indictment is "Odell."

and charged with intentional and depraved indifference murder in connection with the deaths of each of the three infants. Following a jury trial, defendant was found guilty of depraved indifference murder regarding each infant and was sentenced to concurrent indeterminate terms of imprisonment of 15, 20 and 25 years to life. Defendant now appeals.

Initially, defendant contends that County Court erred in failing to suppress the statements given by her to law enforcement officials. The gravamen of defendant's contention is that defendant's husband, as well as defendant, advised the police that defendant wished to consult a lawyer before questioning and that, as a consequence, all statements made thereafter were inadmissible. We disagree.

To understand the context of the situation, a brief recitation of the facts is necessary. On May 17, 2003, the Arizona authorities arrived in Pennsylvania, and defendant was called at her place of work and asked to come to the Pennsylvania State Police barracks. She did so and, upon arrival, disavowed any knowledge of the deceased babies or how they came to be in the storage locker. Defendant then returned to work. The following day, defendant's husband was at the barracks for fingerprinting, a polygraph and the giving of DNA samples and was asked to call his wife and persuade her to come to the barracks to be fingerprinted. At that point, the husband testified, he told the police that defendant had told him she wanted to speak to an attorney before speaking with the police. In any event, the husband called defendant and she agreed to come to the barracks to be fingerprinted. While there, she conversed with Pennsylvania State Police Investigator Gerald Williams, who inquired whether she would talk with him about the deceased infants and whether she wanted an attorney. Defendant responded that she wanted to consult with a lawyer regarding the custody of one of her sons and who would care for him if she were unable to do so. Williams specifically questioned defendant about this representation to be sure it related only to her son and not the investigation regarding the deceased children. He impressed upon her that she did not have to speak with him and was free to go at any time. Finally, Williams testified that defendant expressed her willingness to talk with him about the deceased children and did not want an attorney in that regard.

Initially, we note that a defendant's right to counsel, invoked in a noncustodial setting, will not attach where such request may be seen as equivocal (see People v Glover, 87 NY2d 838, 839 [1995]). Here, assuming County Court credited Williams' testimony, which it clearly did, defendant's desire for counsel

was not only equivocal, it was totally unrelated to the investigation being undertaken. However, even assuming that the desire for counsel related to the investigation at hand, it was clearly made in a noncustodial setting and could be and was withdrawn (*see People v Davis,* 75 NY2d 517, 522-523 [1990]). With regard to defendant's remaining contentions concerning the statements given by her, we find that they were given freely and made while defendant was not in custody and, at the point that she became a suspect in New York, she was given proper constitutional warnings, which she knowingly and intelligently waived.

Next, defendant argues that County Court impermissibly permitted cameras in the courtroom necessitating reversal. We disagree. Although we recently held that issuance of a writ of prohibition was an appropriate vehicle to prevent the use of cameras in the courtroom (*see Matter of Heckstall v McGrath,* 15 AD3d 824 [2005]), no such application was made here. Hence, reversal is required only if defendant demonstrates that she was deprived of a fair trial due to actual prejudice resulting from the presence of the cameras during trial (*see e.g. People v Nance,* 2 AD3d 1473, 1474 [2003], *lv denied* 2 NY3d 764 [2004]), which she failed to do.

We likewise reject defendant's contention that it was error to allow the People's forensic expert to testify as to the cause and manner of death based, in part, on defendant's statements to law enforcement personnel. It is axiomatic that expert testimony is admissible where, as here, the conclusions drawn from the facts depend upon professional knowledge not within the ken of the ordinary juror (*see People v Eberle,* 265 AD2d 881, 882 [1999]). Such expert may rely on facts in evidence, as well as material outside the record, so long as such material is "of a type reasonably relied upon by experts in the field in forming their professional opinions" (*People v Yates,* 290 AD2d 888, 889 [2002]).

We do, however, find that County Court inappropriately permitted the People's expert to opine that the infants' deaths constituted "homicides." Such characterization improperly invaded the province of the jury (*see People v Langlois,* 17 AD3d 772, 774 [2005]). We note, however, that the complained of testimony was not the subject of objection, and the issue is thus not preserved for our review (*see People v Burdick,* 266 AD2d 711, 713 [1999]). Moreover, if we were to review this error in the interest of justice, we would find it to be harmless inasmuch as the expert defined the medical definition of homicide and stated that he was not drawing a legal conclusion in that regard, nor was he making a determination regarding any culpability for the infants' deaths.

We also reject defendant's contention that County Court erred in refusing to charge the lesser offense of criminally negligent homicide. We note that after requesting such charge, defense counsel acknowledged that if such a charge constituted a waiver of defendant's protection under the statute of limitations, defendant did not want the charge. Inasmuch as a request for such charge would result in defendant's waiver of her statute of limitations defense (*see People v Mills,* 1 NY3d 269, 274 [2003]), County Court properly declined to so charge. We have considered defendant's remaining contentions and find them equally without merit.

Cardona, P.J., Spain, Mugglin and Lahtinen, JJ., concur. Ordered that the judgment is affirmed.