OPINION OF THE COURT
Joel M. Goldberg, J.
*887 On July 10, 2006, a Wade hearing was held before me on the defendant’s motion to suppress identification testimony. Following the hearing, the defendant submitted a letter brief dated July 24, 2006, and the People submitted a similar letter brief dated August 1, 2006.
On August 9, 2006, following oral argument on the motion, the court rendered a decision from the bench granting the motion to suppress eyewitness testimony concerning the identification of the defendant at a lineup based on a violation of the defendant’s right to have counsel present at the lineup. In summary, the court found that, although the lineup and preceding photographic array were fairly conducted, the detective who conducted the lineup was aware that the defendant was represented by an attorney in the matter under investigation. Nevertheless, when the defendant surrendered himself at the precinct to participate in the lineup, the detective made no effort to obtain the attorney’s presence at the lineup. Although neither the detective nor the attorney were aware that the defendant had surrendered himself for the lineup against his attorney’s advice, the People argued that the defendant’s actions constituted a knowing waiver of his right to have counsel present even though there was no testimony demonstrating that the defendant knew he had a right to have an attorney present at the lineup.
This decision and order is intended to supplement this court’s earlier decision of August 9, 2006.
The Hearing — Findings of Fact
Two witnesses testified at the hearing, the detective and the defendant’s attorney at the time of the lineup. The court found both witnesses credible.
Detective Michael Paccione was assigned to investigate a homicide that occurred on June 22, 2005 as the result of a shooting on the street. In the course of his investigation, the detective became aware of an eyewitness who was referred to at the hearing as “witness number one” to keep the witness’s identification confidential. On September 21, 2005, following an investigation that led the detective to believe that the deceased may have participated in a May 30, 2005 incident involving a stolen car for which the defendant and an individual named Sheldon Emanuel had been previously arrested, the detective showed a series of photographs to the eyewitness who picked out the photograph of Sheldon Emanuel as the person who was driving a vehicle involved in the shooting.
*888 Emanuel had been arrested on May 30, 2005 for possession of a stolen car along with the defendant. The detective, suspecting that the defendant as well as Emanuel may have been involved in the shooting, then obtained a photograph of the defendant and, on October 3, 2005, showed the witness photographs of 15 individuals, including the defendant. The witness identified the defendant as the person seen holding a gun, running from the scene of the shooting.
On October 14, 2005, looking for the defendant, the detective went to the address on record for the defendant and found Emanuel, who the detective arrested for criminal facilitation for his purported role in the homicide. That arrest was subsequently voided. Knowing that Emanuel and the defendant had the stolen car case pending, the detective told Emanuel to tell the defendant to contact him. The detective made no further effort to find the defendant.
On October 24 or 25, 2005, the detective received a telephone call from Jeff Adler, Esq., the attorney who was representing the defendant in the stolen car case which at the time was pending in Supreme Court, Kings County. (On May 25, 2006, the indictment against the defendant in the stolen car case was dismissed on the People’s motion.) The detective told Adler that the defendant was a suspect in a homicide case and that the detective wanted to speak with the defendant and also wanted the defendant to stand in a lineup. Adler said he was representing the defendant in the matter under investigation and tentatively agreed to produce the defendant for a lineup on November 2, 2005. Three days later, on October 27, 2005, the detective received a call from Adler who told him that the defendant did not want to come to the precinct for a lineup. Adler further said that, if the detective arrested the defendant, the defendant should not be questioned. Adler gave the detective his telephone number.
On November 1 and 2, 2005, Adler called the detective in an effort to learn more information about the case. The first call was to the detective’s cell phone. The detective told Alder he was busy and would call Adler back. The second call was to the precinct where Adler left a message for the detective. Following Adler’s cancellation of the lineup appointment, the detective had received instructions from his “bosses” not to speak to Adler, and, apparently following these instructions, the detective returned neither of Adler’s phone calls.
On November 8, 2005 at about 9:30 a.m., the defendant walked into the precinct without his attorney, and the detective put the *889 defendant in an interview room. The detective told the defendant he could not speak with him, because his lawyer had told him not to do so. The defendant told the detective his lawyer knew he was at the precinct and had told him to come in. (According to the hearing testimony of Adler, which the court credits, Adler did not know the defendant was going to the precinct and had advised the defendant not to do so.) The detective then told the defendant he would be placed in a lineup which took place at approximately 11:10 a.m. The witness identified the defendant in a lineup containing five other persons. The detective had made no effort to contact Adler prior to conducting the lineup and “was not sure” that he ever gave the defendant an opportunity to call Adler.
Adler’s testimony revealed that, notwithstanding what the defendant may have told the detective, the defendant went to the precinct against Adler’s advice and without his knowledge. Adler, an experienced criminal attorney and qualified to accept County Law article 18-B homicide assignments, had been assigned to represent the defendant on the stolen car case. The defendant had told him that codefendant Emanuel had passed along a message from the detective that the detective wanted to speak with the defendant. Adler called the precinct and reached the detective who told Adler that the defendant may have been involved in a homicide related to the pending stolen car case and that the detective wanted the defendant to appear in a lineup. A tentative date of November 2, 2005 was scheduled for Adler to appear with the defendant subject to Adler speaking with the defendant.
Over the next two days, Adler spoke with the defendant (apparently over the telephone) and the defendant decided after listening to Adler’s advice not to agree to appear in the lineup. Adler called the detective back on October 27, 2005 and cancelled the lineup appointment. The defendant had a further telephone conversation with Adler, possibly on November 7, 2005, the day before the lineup in which the defendant said he wanted to go to the precinct and stand in the lineup. Adler had learned from the detective that the defendant’s photograph had already been identified by a witness and that, if the defendant appeared for a lineup, Adler believed the defendant would be identified and placed under arrest. Adler had also told the defendant that his arrest in the homicide case was “inevitable” whether or not he voluntarily went to the precinct for a lineup. Adler believed he had persuaded the defendant not to go to the *890 precinct and told the defendant that, if the defendant changed his mind, Adler would arrange a date and accompany the defendant.
Although given a full opportunity to cross-examine Adler on his conversations with the defendant concerning the lineup, the People did not ask whether Adler specifically advised the defendant of his right to have a lawyer present at the lineup. While it is clear that the defendant disregarded Adler’s advice not to voluntarily appear for a lineup, Adler never testified he informed the defendant that, whether or not the defendant voluntarily went to the precinct, he had a right to have a lawyer present at a lineup. Because Adler did not know the defendant would go to the precinct on his own, there would have been no reason for Adler to tell the defendant that he would have a right to the presence of a lawyer at the lineup. Thus, when the defendant walked into the precinct on November 8, 2005, the record does not reflect that the defendant knew he had a right to counsel if he were placed in a lineup.
Although the defendant decided to appear for the lineup without telling his lawyer, the defendant did not agree in the presence of counsel to waive his right to counsel at the lineup. Indeed, the defendant could not waive his right to counsel at the lineup if he did not even know he had that right.
This situation could have been rectified prior to the lineup if the detective, knowing that Adler represented the defendant in the matter, had called Adler and let him know the defendant was at the precinct. There was no rush to do the lineup. The witness was readily available. The detective had probable cause to arrest the defendant based on the photographic identification. However, the detective did not make the call.
Discussion
The People have conceded in their letter brief and on oral argument that the defendant had “an indelible right to counsel” at the lineup based on Adler’s informing the detective that he represented the defendant in the homicide investigation. In People v LaClere (76 NY2d 670 [1990]), the Court of Appeals held that where prior to the filing of formal charges against a suspect an attorney communicates a request to the police that a client not be questioned, the police have a duty in the absence of exigent circumstances to notify counsel and give counsel a reasonable opportunity to appear before placing the client in a lineup, even though neither the attorney nor the client made such a request. Where the police know that a suspect is *891 represented by counsel in a matter under investigation and, nevertheless, conduct a lineup in the absence of counsel, “the police [take] the risk that the adduced evidence [will] not be allowed.” (People v LeClere at 672.)
Because Detective Paccione was made aware by Adler that he represented the defendant in the matter under investigation, the defendant’s right to counsel at the lineup “indelibly attached,” meaning the defendant could not be placed in a lineup without counsel being present unless the defendant waived his right to counsel in the presence of counsel. (People v Grice, 100 NY2d 318, 321 [2003]; People v Wilson, 89 NY2d 754, 759 [1997] [police had duty to notify counsel before placing the client in a lineup notwithstanding that when asked if he wanted an attorney at the lineup the client replied that he had none].) Thus, even though the defendant may have told the detective that his attorney knew the defendant was at the precinct for a lineup, the detective, like the police in LeClere, took a risk in not calling the attorney to verify that the defendant had, in fact, knowingly waived his right to the presence of counsel, a conclusion which this record does not support.
The defendant’s purported claim that his attorney knew he was at the precinct was not sufficient to relieve the police of their duty to notify Adler of the impending lineup, particularly where the police had no independent verification that the defendant was telling the truth. (People v Wilson, supra; compare, People v Yut Wai Tom, 53 NY2d 44, 52-54 [1981] [the record established that the defendant agreed with his attorney’s advice to waive the presence of counsel at the lineup after having discussed “the reasons for and effects of a waiver” as distinguished from a discussion concerning whether or not to surrender to the police to be placed in a lineup].)
Where the indelible right to counsel, originally developed in connection with police interrogations and later applied to lineups, has attached by entry of an attorney into the case, it may only be waived by an uncharged suspect in the presence of counsel in order to insure that the coercive power of the state does not interfere with the attorney-client relationship and to insure that those who do waive their rights do so competently, intelligently, and voluntarily. (People v Davis, 75 NY2d 517, 520 [1990].) Once the right to counsel has attached, “the police may not proceed with the lineup without at least apprising the defendant’s lawyer of the situation and affording the lawyer a reasonable opportunity to appear.” (People v Mitchell, 2 NY3d *892 272, 274-275 [2004].) Because Adler did not know that the defendant would disregard his advice and go to the precinct to possibly be placed in a lineup, and because the record does not show that the defendant was even aware of his right to counsel at the lineup, there was no valid waiver by the defendant of his right to counsel at the lineup.
The People correctly cite People v Yut Wai Tom (supra) for the proposition that a suspect’s indelible right to counsel at a lineup may be waived without the attorney actually being present where the suspect has had an opportunity to confer with counsel on the telephone before agreeing to proceed with the lineup. However, the People overlook the crucial point in Yut Wai Tom (at 54) that the attorney agreed with the decision to hold the lineup in his absence: “In short, unless counsel is satisfied that his client’s decision to waive is a proper one, no waiver can be effected except by defendant in his counsel’s physical presence.”
To emphasize the need for the actual presence of the attorney where the attorney does not agree with the client’s decision to waive the right to the presence of counsel, the Court in Yut Wai Tom (at 54) cited People v Tompkins (45 NY2d 748 [1978]). Tompkins held that a purported waiver by a suspect of the right to counsel when being questioned was not effective even though the suspect conferred on the telephone with counsel, because, just as in this case, counsel did not agree with the suspect’s decision to waive his right to counsel.
Thus, where counsel does not agree with the client’s decision to speak with the police or stand in a lineup in the absence of counsel, a waiver of the indelible right to counsel for these procedures can only be effective if made in the actual physical presence of counsel. This requirement insures that the police do not improperly influence the client’s decision to waive the right to counsel and preserves the integrity of the attorney-client relationship by not allowing the police to proceed until counsel and the suspect have had an opportunity to speak with each other face to face before the suspect, against counsel’s advice, waives the right to remain silent or the right to the presence of counsel at a lineup. (People v Davis at 521 [1990].)
Therefore, even if the defendant was aware of his right to counsel at the lineup, the waiver by the defendant of his right to have his attorney present was not effective, because the waiver by the defendant was not made either with the agreement of his attorney or in his attorney’s actual presence in the precinct at the time the waiver was made.
*893 It is unfortunate that Detective Paccione, knowing that the defendant was represented by counsel and not faced with an exigency requiring an immediate lineup, perhaps misinterpreting the instructions of his “bosses” not to call the defendant’s attorney, chose to conduct the lineup in the absence of the defendant’s attorney. Although the factual situation confronting the detective may have been unusual when the defendant appeared without prior notice at the precinct and told the detective he was willing to stand in a lineup, the legal obligation of the detective not to conduct that lineup without defense counsel being there has been the law of the state for many years.
Accordingly, the defendant’s motion to suppress testimony of the lineup identification is granted, and the matter is to be scheduled for an “independent source” determination as to “witness number one.” Even though neither the photographic identification nor lineup procedures were unnecessarily suggestive, the right to counsel violation requires the People to demonstrate an independent source for the in-court identification. (Hibel, New York Identification Law, at 312 [2006].)