People v Hayes (2026 NY Slip Op 50115(U))

[*1]

People v Hayes

2026 NY Slip Op 50115(U)

Decided on January 30, 2026

County Court, Columbia County

Herman, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on January 30, 2026
County Court, Columbia County

The People of the State of New York

againstMaya Hayes, Defendant.

Indictment No. 70087-24

Chris Liberati-Conant, Esq.Columbia County District Attorney325 Columbia Street, Suite 260Hudson, New York 12534By: Cheryl A. Botts, Esq., Chief Assistant District Attorney 
Attorney for the PeopleThomas B. Donaldson, Esq.136 Madison Avenue, Sixth FloorNew York, New York 10016Attorney for the Defendant

Brian J. Herman, J.

On application of the defendant and the consent of the People, a hearing pursuant to People v Huntley (15 NY2d 72 [1965]) was conducted before this court on December 9, 2025.
At issue is a two-hour and twelve-minute-long audio-recorded interview of the defendant conducted by Investigator Luke Newton of the New York State Police in the vestibule of the defendant's residence. At the hearing, the People offered the testimony of Investigator Newton, through whom the recording was received in evidence as People's Exhibit 1. The People submitted a post-hearing memorandum. The defense made no submission.OVERVIEWThe operative principles are well-established. At a Huntley hearing, the People have the burden of establishing, beyond a reasonable doubt, that statements made by a defendant to law enforcement authorities were made voluntarily and not the product of coercion, promises or false statements which create a substantial risk of false incrimination or undue pressure which undermines a person's ability to make a free choice (CPL §60.45; People v Huntley, 15 NY2d [*2]72, 78 [1965]; People v Yarter, 41 NY2d 830, 831 [1977]). Assessing voluntariness requires examination of the "totality of the circumstances" (United States v Bye, 919 F2d 6 [2d Cir 1990]; People v Anderson, 42 NY2d 35 [1977]). A defendant who is in custody may not be interrogated by law enforcement without being advised of their constitutional rights (Miranda v Arizona, 384 US 436 [1966]). A defendant's custodial status is an objective inquiry as to whether a reasonable person, innocent of any crime, would feel free to leave in the defendant's circumstances (People v Yukl, 25 NY2d 585 [1969]). Interrogation refers to both express questioning and any words or actions by the police other than those ordinarily connected to arrest and custody that the police should know and a reasonably likely to elicit an incriminating response (Rhode Island v Innis, 446 US 291, 301 [1980]). Having heard the recording in its entirety and considered the testimony of Investigator Newton in conjunction therewith, these sundry considerations can be distilled to a single general proposition: suppression of the defendant's statements hinges upon whether and when the defendant invoked her right to counsel as guaranteed under the New York State and Federal Constitutions. 
"The right to counsel clause in the State Constitution is more restrictive than that guaranteed by the Sixth Amendment to the United States Constitution . . . by resting the right upon the State's constitutional provisions guaranteeing the privilege against self-incrimination, the right to assistance of counsel and due process of law [the New York Court of Appeals] ha[s] provided protection to accused far more expansive than the Federal counterpart" (People v Bing, 76 NY2d 331, 338 [1990]). By way of example, once a defendant who is in custody unequivocally requests the assistance of counsel, any subsequent waiver obtained in the absence of counsel is ineffective (NY Const, art I, §6; People v Cunningham, 49 NY2d 203, 205 [1980]). On the other hand, if a defendant is not in custody when he invokes his right to counsel, he is free to subsequently withdraw that request and waive his right to counsel (People v Davis, 75 NY2d 517 [1990]). Irrespective of a defendant's custodial status at the time of invocation, a request for counsel must be "scrupulously honored" by law enforcement (People v Grant, 45 NY2d 366, 376 [1978]; People v Rowell, 59 NY2d 727, 730 [1983]).
In both custodial and non-custodial settings, effectiveness requires that the request for counsel be communicated unequivocally (People v Hicks, 69 NY2d 969, 970 [1987]; People v Odell, 26 AD3d 527, 528 [3d Dept 2006]). "Whether a particular request is or is not unequivocal is a mixed question of law and fact that must be determined with reference to the circumstances surrounding the request including the defendant's demeanor, manner of expression and the particular words found to have been used by the defendant" (People v Glover, 87 NY2d 838, 839 [1995]). The "suggestion that counsel might be desired; a notification that counsel exists; or a query as to whether counsel ought to be obtained will not suffice" (People v Mitchell, 2 NY3d 272, 276 [2004]). The test is an objective one: whether a reasonable police officer in the circumstances would understand the statement to be a request for an attorney (Davis v United States, 512 US 452, 459 [1994]; People v Harris, 20 NY3d 912 [2012]).
DISCUSSIONFrom its commencement to its conclusion and at several points therebetween, the defendant made references to counsel in her interview with Investigator Newton. Despite having raised the subject of counsel numerous times throughout, the defendant ultimately continued speaking with Investigator Newton for over two hours on subjects related to the allegations in the indictment. There being no record support for a finding the defendant was in custody at the time of her statements, the task before the court is twofold. It must first be determined which, if [*3]any, of the defendant's several references to counsel constitute an unequivocal invocation of her right to counsel. If, as a matter of law and fact, the defendant did so invoke, the inquiry becomes whether law enforcement scrupulously honored this request until such time as it was freely and voluntarily withdrawn by the defendant.
In such a case, the court "must indulge every reasonable presumption against waiver" (id. at 523; Oregon v Brewster, 430 US 387, 404 [1977]). Under these circumstances, it is always desirable — and maybe necessary — for the authorities to remind defendant of the earlier request for counsel and obtain and express withdrawal and present a waiver of the request for legal assistance. Factors which can support an inference that the earlier request for counsel has been withdrawn include "whether defendant was fully advised of his or her constitutional rights before invoking the right to counsel and subsequently waiving it, whether the defendant who has requested the assistance of counsel earlier has initiated the further communication or conversation with the police, and whether there has been a break in the interrogation after the defendant has asserted the need for counsel with a reasonable opportunity during the break for the suspect to contact an attorney" (Davis, 75 NY2d at 523).
The defendant's mid-interview references to counsel ranged from inquiries: "Do I need an attorney?" [0:05:15]; "Shouldn't I have an attorney at this point?" [1:11:28] to expressions of desire for representation delivered without absolute confidence or using conditional language: "[discussion of] anything beyond [the subject of contraband entering the OCFS facility] I'd want an attorney present" [0:29:58]; "I was told never to talk to police without an attorney. I think I should before I have any further conversation with you" [0:35:40]; "I think I should have a lawyer, but I guess at this point something in the back of my mind is telling me I should have a lawyer. At this point I think I should" [1:52:40].
Within the first thirty-six minutes of the interview, the defendant made four references to counsel. Moments after the Investigator Newton identified himself as being with the State Police, the defendant inquired as to whether she needed an attorney [0:05:15]. Such inquiries have been long held equivocal (see People v Hicks, 69 NY2d 969, 970 [1987]), triggering no obligation on the part of law enforcement to discontinue questioning. In any event, Investigator Newton immediately advised the defendant that he could not provide her with legal advice, that she was under no obligation to speak with him and if she elected to seek counsel and terminate the interview, he would leave the residence without placing her under arrest [0:05:20]. Investigator Newton explained that he was investigating issues at the Brookwood Secure Center for Youth, where the defendant was a clinician until being placed on leave approximately a year earlier. Following this preliminary discussion, the defendant stated, "I don't feel comfortable speaking without an attorney, so why don't you start off with what you know?" [0:11:56]. Rather than immediately addressing the defendant's question, Investigator Newton repeated the panoply of cautions and assurances he issued the defendant minutes earlier [0:12:10], to which the defendant responded, "[b]ut I don't know the source of this. I don't mind talking to you, I really don't, [but] I don't even know why you're here" [0:12:25]. After further discussion, Investigator Newton requested clarification as to whether the defendant was requesting the assistance of counsel. "It's not so much I want an attorney. I just don't know anything. I don't know what's going on [0:17:00 — 0:17:10] . . . before I decide if I want to talk to you, what is it you're investigating?" [0:18:33]. Based on this exchange, to whatever extent the defendant's expression of discomfort can be construed a request for counsel, the request was clearly and unambiguously negated at the time it was made, and as such, cannot constitute an unequivocal [*4]invocation. (People v Glover, 87 NY2d 838, 839 [1995]). Nor from this dialogue could there have been any doubt in the mind of Investigator Newton that the defendant was desperate for information about the investigation.
Discussion ensued regarding the introduction of contraband at Brookwood. The defendant acknowledged occasionally providing some residents outside snacks, but denied supplying them with cannabis products [0:28:56]. "Anything beyond that," she said, "I'd want an attorney present" [0:29:58]. For the third time, Investigator Newton recited what appear to be his standard cautions and assurances and sought clarification as to whether the defendant was requesting counsel. Once again, the defendant agreed to continue, stating, "I don't mind keeping talking to you" [0:32:40].
Minutes later, the following exchange was had:
The defendant: I was told never to talk to police without an attorney. Investigator Newton: I'm telling you [that] you don't have to talk to me, its up to you.The defendant: I think I should before I have any further conversation with you. I think, it's not that I don't trust you . . .Investigator Newton: Before you make your decision, would you like me to lay out all the questions I have, then you can make your decision? We can do that.The defendant: I'd like that.Investigator Newton: Would you like to do that before you make your decision?The defendant: Yes.[0:35:33 — 0:36:06]Investigator Newton then advised the defendant that he wished to inquire into allegations that the defendant provided cannabis products and engaged in sexual relations with residents. Investigator Newton quickly transitioned from generality to particularity, launching into a recitation of specific allegations, including that more than ten residents, some under the age of seventeen, claimed to have had sexual relations with the defendant; that State Police were in possession of evidence that the defendant had sexual contact with at least one resident; that the defendant employed threats and coercion to compel participation in sexual encounters; and that a civil lawsuit was forthcoming by one or more of the alleged victims. The defendant spoke with Investigator Newton for ninety more minutes, inculpating herself throughout.
In view of the totality of the circumstances (Anderson, 42 NY2d at 35), the court must hold that the defendant's statement, "I was told never to talk to police without an attorney . . . I think I should before I have any further conversation with you" constitutes an unequivocal invocation of her right to counsel. That the defendant employed softer language — specifically, that she "thought she should" have counsel — does not render the expression equivocal. Similar expressions, "I thank I want to talk to a lawyer" (People v Harris, 93 AD3d 58, 60 [2012]); "I might need a lawyer" (People v Esposito, 68 NY2d 961 [1986] and "I think I need an attorney" [*5](People v Porter, 9 NY3d 966 [2007]) have all been held unequivocal invocations by the Court of Appeals. Though the defendant's three previous references to counsel did not carry the consequence of invocations, they amply contextualized the first thirty minutes of the interview such that a reasonable police officer under the circumstances would easily understand "I was told never to talk to police without an attorney . . . I think I should before I have any further conversation with you" to be a request for counsel (Davis, 512 US at 459). 
On this record, the court cannot conclude that the defendant's request for counsel was scrupulously honored (Grant, 45 NY2d at 376). While inquiries to a potentially-invoking suspect are permissible to "clarify the situation . . . so long as this [is] not accomplished in a manner which would tend to dissuade a defendant from exercising his rights" (People v Stroh, 48 NY2d 1000, 1002 [1980]), where, as here, a defendant unequivocally invokes their right to counsel, an offer to provide additional information cannot possibly be deemed clarifying or assistive in nature. After all, the defendant's "decision" has already been made. Under these circumstances, any immediately undertaken efforts to continue the interrogation must be construed as an endeavor to convince the defendant to abandon her request for counsel — in other words, to dissuade the defendant from exercising her rights. 
That the defendant's will was overborne by her overwhelming desire to learn about the case against her in no way vitiates her invocation nor excuses its disregard by police (see People v Dawson, 38 NY3d 1055, 1061-1062 [2022]["(the defendant's) interest in knowing what was going on, particularly why he had been detained and for how long he would be kept at the police station . . . does not in any way diminish the clarity of his request for counsel: a defendant can simultaneously want to know the charge against him and to be represented by counsel" (Wilson, J., dissenting). To be clear, the issue is not that Investigator Newton incentivized the defendant's forthrightness with previously undisclosed information about the investigation. At any prior point in the interview, so doing would bear not on voluntariness whatsoever. As it were, he did so in direct response to a valid invocation of the right to counsel. This was coercive. That it was done with a smile and in a friendly tone of voice does not make it less so. Therefore, any and all statements of the defendant made between 0:35:33 and 2:12:00 of People's Exhibit 1 must be suppressed.
In light of the foregoing, the court need not reach the question of whether the defendant validly withdrew her request for counsel. Nevertheless, under these circumstances, all of the Davis factors favor suppression. The defendant was not given Miranda warnings prior to or subsequent her invocation; it was Investigator Newton who initiated post-invocation communication; and there was no break in the interview within which the defendant was able to contact an attorney (Davis, 75 NY2d at 523).
Accordingly, it is hereby
ORDERED that the defendant's motion to suppress the defendant's statements made between 0:00:00 and 0:35:32 of People's Exhibit 1 is denied; and it is further
ORDERED that the defendant's motion to suppress the defendant's statements made between 0:35:33 and 2:12:00 of People's Exhibit 1 is granted; and it is further
ORDERED that jury trial on the indictment remains scheduled to commence on March 10, 2026 at 9:00 a.m.
This constitutes the decision and order of the court.
Dated: January 30, 2026Hudson, New YorkHon. Brian J. HermanCounty Court Judge